### WILSON et al. v. BOWERS.
### No. 325.

Circuit Court of Appeals, Second Circuit.

April 11, 1932.

George Z. Medalie, U. S. Atty., of New York City (Murray I. Gurfein, Asst. U. S. Atty., of New York City, of counsel), for appellant.

Taylor, Blanc, Capron & Marsh, of New York City (Russell L. Bradford and Edwin E. Peterson, both of New York City, of counsel), for appellees.

Before L. HAND, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

SWAN, Circuit Judge.

This appeal presents a dispute as to the value of 3,000 shares of corporate stock owned by the testator at the time of his death and specifically bequeathed by him to his nephew Franklin H. Wilson. In their return of estate taxes, the executors valued these shares at $20,000 or $6.66⅔ per share. The Commissioner of Internal Revenue increased the valuation to $23.55 per share, with the result that an additional tax of $3,039 was assessed against the executors, and paid by them on July 14, 1922. To recover this sum, with interest from the date of payment, the present action was brought against Collector Bowers, and after his death, was duly continued against his executor, the appellant. It is conceded that the judgment awarded the plaintiffs was right, if their valuation of the shares is sustainable.

For purposes of the estate tax imposed by the Revenue Act of 1918 (40 Stat. 1057, 1097), section 402 provides that the value of the gross estate of a decedent shall be determined by including the value at the time of his death of all property "to the extent of the interest therein of the decedent at the time of his death which after his death is subject (1) to the payment of the charges against his estate and (2) the expenses of its administration and (3) is subject to distribution as part of his estate." Thus the tax is to be levied on the value of the decedent's interest at the time of his death, and this means, as the Regulations themselves provide, that "the value to be ascertained is the market, or sale, value of the property." Article 14, Reg. 37. Moreover, the decedent's interest must possess all three of the above-enumerated characteristics, as these requirements are to be read conjunctively. Crooks v. Harrelson, 282 U. S. 55, 51 S. Ct. 49, 75 L. Ed. 156.

The valuation returned by the executors in respect to the shares here involved was based upon a contract dated May 21, 1909, between the testator, his nephew Franklin, and one Betts. These three owned all the common stock of Earl & Wilson Company. By the contract the testator agreed not to sell or assign his shares without first offering them to his nephew Franklin at $6.66⅔ per share payable within four months from the date of the offer; and if Franklin did not accept the offer, a similar offer was to be made to Betts. It was also provided that upon the death of Arthur R. Wilson, said Franklin should have the right for four months after the qualification of the testator's executors to purchase the stock at the price of $6.66⅔ per share, and in the event of his failure to exercise the option a similar right was given to Betts. Reciprocal options granted by the other parties to Arthur R. Wilson furnished consideration for his promises. The appellant does not dispute the validity of the contract nor deny that it could be specifically enforced against any transferee with notice to whom the testator might have transferred during his life, or against his executors after his death. See Scruggs v. Cotterill, 67 App. Div. 583, 73 N. Y. S. 882; Rockland-Rockport Lime Co. v. Leary, 203 N. Y. 469, 97 N. E. 43, L. R. A. 1916F, 352, Ann. Cas. 1913B, 62; Matter of Fieux, 241 N. Y. 277, 149 N. E. 857; Marthinson v. King, 150 F. 48 (C. C. A. 5).

Since the contract was specifically enforceable, it seems obvious that the sale value of the stock during the testator's life could have been no more than the low price at which he was obliged to offer it, first, to Franklin Wilson, and then to Betts; nor could his executors have sold it for more, unless both the option holders had allowed

their options to lapse. Even if each was penniless, money could readily have been borrowed on the stock when it was worth nearly four times the option price. We are to deal with actualities; and the suggestion that the shares may have had a greater market value because of the possibility that the options would not be exercised seems too extravagant to require further refutation. Nor do we see the force of the appellant's argument that the holder of an option has no equitable interest in the property until the option is exercised. Williston, Contracts (2d Ed.) § 61. Granting this and accepting the appellant's analysis of the legal relations created by an option, the option holder's power to create a contract enforceable in equity was as effective to depress the value of the option giver's interest in the property subject to the option as would be the contract itself when created. So long as the option here involved was outstanding, the property could not be sold for more than the option price.

It is urged that the full value of the shares was subject to charges against the decedent's estate. Two cases are relied upon. Sheeby v. Scott, 128 Iowa, 551, 104 N. W. 1139, 4 L. R. A. (N. S.) 365; West Virginia Pulp & Paper Co. v. Cooper, 87 W. Va. 781, 106 S. E. 55. They hold merely that an attaching creditor may prevail over the holder of an option on the attached property, if the attachment antedates the exercise of the option. Granting that attaching creditors might reach the full value of the property, it by no means follows that simple creditors of the testator would prevail over an option holder willing and able to pay the option price. An attaching creditor obtains a legal lien which may well have precedence over the option holder's power to obtain in the future a specifically enforceable contract—a conditional equity, as it were—but whether simple creditors should have precedence is another matter. But we need not decide it. To be taxable at its full value the interest of the testator must also be subject to distribution as part of his estate. These shares were not. Had the testator attempted to bequeath them to a stranger, the option holders could have taken them away from the legatee upon paying him $20,000 within the time limited by the contract.

Finally, the appellant argues that the option was never exercised, and that Franklin Wilson took under the will thereby relinquishing his option and leaving the interest which passed by will the full value of the shares. Logically, subsequent events should not be considered in determining value at the time of death. It is true that this court held the contrary with respect to the relinquishment of dower in Schuette v. Bowers (C. C. A.) 40 F.(2d) 208, 213. But the ruling there made was put squarely on precedent and was recognized as illogical. We shall not extend it where authority does not compel.

Judgment affirmed.