**LOMB v. SUGDEN, Collector of Internal Revenue.**

No. 231.

Circuit Court of Appeals, Second Circuit.

March 2, 1936.

Hubbell, Taylor, Goodwin, Nixon & Hargrave, of Rochester, N. Y. (Lewis Clinton, of Rochester, N. Y., of counsel), for appellant.

Frank J. Wideman, Asst. Atty. Gen., Sewall Key, John MacC. Hudson, and Paul R. Russell, Sp. Assts. to Atty. Gen., George L. Grobe, U. S. Atty., of Buffalo, N. Y., and Joseph J. Doran, Asst. U. S. Atty., of Rochester, N. Y., for appellee.

Before L. HAND, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

This is an appeal from a judgment in an action brought by the executor of the will of Carrie B. Lomb to recover an alleged overpayment of federal estate taxes. Mrs. Lomb, at the time of her death on October 3, 1929, owned 1,500 shares of Bausch & Lomb Optical Company, and by her will bequeathed them as a part of her residuary estate to her husband, Carl F. Lomb, and appointed him executor. On May 16, 1928, she, with all the other stockholders of that company, had entered into an agreement whereby none of them could sell their stock without first offering the shares to

be sold to the others, who were to have the right to purchase "in proportion to their then respective common stockholdings" and at a price which when computed in accordance with the agreement amounted to $69.445 per share. The agreement also provided that if the other stockholders should refuse to make such a purchase the stock might be sold to outsiders. It also provided that any stockholder might give away his stock to any of the other shareholders and, if he died without issue, might bequeath it to any of the other shareholders and might also bequeath 10 per cent. of his holdings to outsiders. If he left no issue and to the extent that he made no such bequests, his executors or administrators must offer the stock at the limited price to the other members of the group in proportion to their stockholdings. In the event of the refusal of the latter to purchase, the executors or administrators might sell the stock without any restriction.

In assessing the estate tax the Commissioner disregarded the limitation in the value of the stock which was fixed for purposes of sale to members of the group, assessed it for the estate tax at $100 per share, and accordingly determined a tax deficiency of $370.46. This amount was paid by Mrs. Lomb's executor, who thereafter brought the present action to recover the payment. Upon the trial, the complaint was dismissed and thereafter this appeal was taken by the plaintiff. The district judge held that the agreement limiting the price at which the stock had to be offered to the other stockholders was not binding on the Commissioner, that it could not be specifically enforced, that its legal effect, therefore, was not to restrict the sale of the stock; and that in any event, when under the agreement the decedent was empowered to bequeath the stock or to transfer it inter vivos as a gift to the other stockholders, the limited price could not be substituted for the market price in order to arrive at a value on which to assess the estate tax.

█ We see no reason for the conclusion of the District Court that the agreement, regulating the terms of sale and fixing the price at which the stock would have to be offered to the other stockholders, could not be specifically enforced. The validity of a similar agreement was recognized by the New York Court of Appeals in Re Fieux's Estate, 241 N.Y. 277, 149 N.E. 857. See, also, Marthinson v. King, 150 F. 48 (C.C.A.5). In Wilson v. Bowers, 57 F.(2d) 682, 683, we held the contract valid and specifically enforceable "against any transferee with notice," though we at the same time remarked that the collector had not denied that it was valid and enforceable. We there determined that an option contract, giving stockholders a right to purchase at a specified price, upon the owners sale or death, limited the value of the stock to the low price at which he or his executors were obliged to sell it. We can see no essential difference between that case and this. The transferees of the decedent here would necessarily be either members of a group of stockholders who were mere donees, or else would be members of a group of stockholders who had the privilege of purchasing the shares at the limited price of $69.445 per share. In either case the decedent had stock which she was obliged to give away or to sell at $69.445, if members of the group were willing to pay that price (30 per cent. less than the assessed value) for the proportion of the stock offered for sale to which each was entitled under the agreement. As Holmes, J., said in Edwards v. Slocum, 264 U.S. 61, 63, 44 S.Ct. 293, 68 L.Ed. 564, quoting from Knowlton v. Moore, 178 U.S. 41, 49, 20 S.Ct. 747, 44 L.Ed. 969, the tax is on "not the interest to which some person succeeds on a death, but the interest which ceased by reason of the death." Mrs. Lomb at the time of her death was restricted to a price of only $69.445 because she was obliged either to donate her stock to the other stockholders or to offer it to them at that low price. In either event that price was the most that she could obtain for her stock in the natural course of events.

It is argued that there might have been competition between the other shareholders that would run up the price of any shares offered for sale, but this is not so, for no shareholder could claim more than his proportion of any shares which might be offered for sale, and any stockholder taking up the offer would hold the stock acquired, subject to the limitation that no stockholder might sell any of the stock "whether now owned or hereafter acquired to any other person or party not a party to the agreement without offering to sell the same to all the

other common stockholders of said company who are parties hereto." Thus the limitation in price affected not only the stockholder seeking to sell, but any of the other stockholders who might acquire the stock because they would have to hold it subject to the original limitation upon the selling price.

The decision of the Supreme Court on January 13, 1936, in Helvering v. Salvage, 56 S.Ct. 375, 377, 80 L.Ed. ——, recognizes an option agreement as restricting the market value of stock in the hands of the owner to the option price. There Justice McReynolds said: "Considering the option to repurchase at par, outstanding in 1922, there could be no proper finding of fair market value at that time in excess of $100 per share." Because of the agreement, the decedent could not have secured a price greater than $69.-445 at the time of her death. It is as of that time that the value of the stock must be determined. Then she could only give it or sell it to the other stockholders at the price fixed. Its value to the estate can be no greater than that with which the decedent parted. Edwards v. Slocum, 264 U.S. 61, 63, 44 S.Ct. 293, 68 L.Ed. 564.

We think that Helvering v. Salvage, supra, and Wilson v. Bowers (C.C.A.) 57 F.(2d) 682, govern, and that the judgment should be reversed and judgment entered pursuant to the findings for $366.-66, with interest from August 6, 1932.

Judgment reversed and case remanded, with directions to enter judgment for the plaintiff for $366.66, with interest from August 6, 1932.