ESTATE OF ALBERT L. SALT, DECEASED, LLOYD BERGEN SALT AND MARY BERGEN SALT, EXECUTORS, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 27039. Promulgated July 31, 1951.

*Paul L. Peyton, Esq.*, for the petitioners.
*Rigmor O. Carlsen, Esq.*, for the respondent.

98

OPINION.

BLACK, *Judge:* There are two questions for our decision in this proceeding: (1) Whether respondent erred in determining that the voting trust certificate representing 4,000 shares of Graybar stock which decedent held at the time of his death is includible in the gross estate at a value of $60 per share or a total of $240,000; and (2) whether respondent erred in including in decedent's gross estate the amount of $40,000 which decedent's widow received from Graybar (decedent's former employer) as a "Regular Death Benefit."

The special death benefits aggregating $80,400 paid to Mrs. Salt over a period of 5 years described in our findings of fact are not in issue.

*Issue 1.* As to the value of the voting trust certificate representing 4,000 shares of Graybar stock which decedent held at the time of his death respondent has determined the value to be $60 per share or a total of $240,000 for inclusion in decedent's gross estate. Petitioner

reported the value of these shares in the estate tax return at $20 per share or $80,000 which was the amount received by the estate from Graybar on September 30, 1946, when Graybar exercised its option to purchase at $20 per share. Not only was the estate required to offer the stock to Graybar after decedent's death for $20 per share but also, if during decedent's lifetime he had desired to dispose of the stock, he was required to offer it to Graybar at $20 per share. The stock being subject to this restrictive agreement, which in practice had always been adhered to by Graybar, we conclude that the value of the stock for estate tax purposes was $20 per share. *Lomb* v. *Sugden*, 82 F. 2d 166; *Wilson* v. *Bowers*, 57 F. 2d 682. Cf. *May et al., Exrs.* v. *McGowan*, 97 F. Supp. 326. In that case the court said in deciding an issue similar to the one we have here:

The first inquiry should be whether the stock was subject at the time of decedent's death to an enforceable option to buy at a specific price. If so the fair market value could not exceed the option price. * * * That was the fair market value of the decedent's stock at his death for estate tax purposes. *Wilson* v. *Bowers*, 57 F. 2d 682; *Lomb* v. *Sugden*, 82 F. 2d 166. It would require far more temerity than I possess to hold with the Government's contention that the *Wilson* and *Lomb* cases (both decisions of the Court of Appeals for the Second Circuit) are plainly outmoded and have no remaining vitality. If those cases are to be discarded it would seem to be the more prudent course to await the unequivocal word of that Court, or a higher one.

In determining the value of the stock to be $60 per share respondent has laid great stress on the fact that over the period from 1946 through 1950, after decedent's death, decedent's widow received from Graybar as a "Special Death Benefit" pursuant to the Plan for pension and other benefits, an amount equivalent to what the dividend on 4,000 shares would have been during this period. Although the widow received sums which were measured by the stockholdings of decedent at the time of his death the provisions of the Plan under which the payment of this money was made were subject to termination by the board of directors of Graybar at any time either *before or after* the death of decedent. The amount actually received by decedent's widow as a special death benefit was $80,400 extending over a period of 5 years; however, it was not something in which decedent had any interest whatever at the time of his death. These payments were made to Mrs. Salt as special death benefits under the Plan and not as a stockholder of Graybar. All stock that decedent owned in Graybar at the time of his death had been sold by his executors to Graybar who owned the enforceable option to acquire it at $20 per share. These 4,000 shares had been sold and transferred to Graybar prior to the time that any of the special death benefits were paid to Mrs. Salt. She never at any time owned any interest in these shares which were sold to Graybar under its option.

For reasons already stated we sustain petitioner's valuation of $20 per share; they could not have been sold for more and were not sold for more.

*Issue 2.* At the time of decedent's death Graybar's Plan for pensions and other benefits provided that in the discretion of the committee administering the Plan, the committee could authorize the payment of a specified amount to certain persons related to a deceased pensioner. This payment came under the provisions of the Plan entitled "Regular Death Benefits." Decedent was one of Graybar's pensioners and pursuant to this provision by order of the committee administering the Plan decedent's widow received $40,000 from Graybar.

Respondent has determined that this $40,000 is includible in decedent's gross estate and relies on section 811 (a) of the Internal Revenue Code.[1] Petitioners did not include the $40,000 in the estate tax return filed by them and they contend that respondent has erred in his determination. At the time of his death decedent had no vested interest in the $40,000 nor did his widow have an enforceable right to the $40,000. Whether she would receive it was entirely within the discretion of the committee administering the Plan. Since the decedent's "interest" in the $40,000 was a mere expectancy that his widow would receive the payment, it is not includible as a part of his gross estate under section 811 (a) of the Code. See *Dimock*. v. *Corwin*, 19 F. Supp. 56, affirmed on other issues 99 F. 2d 799, 306 U. S. 363. In the *Dimock* case it was held that where an employer adopted an annuity and insurance plan subject to withdrawal or modification providing for payment of a death benefit to a designated beneficiary, but for no payment if no beneficiary had been designated or if designated beneficiary died before employer and another had not been designated, such death benefit was no part of decedent employee's estate subject to tax, as employee's right to render it possible for beneficiary to receive the benefit was not property. The court in so holding said, among other things:

It is concluded as to the first question, that there pertained to Mr. Folger, during his life, only the right to render it possible for Mrs. Folger to receive a grant from the Standard Oil Company, and that this did not constitute property of his under section 302 of the law, or subdivision (a), and that the act of naming her as the recipient of the death benefit was not a transfer of property by him to her, so as to fall within subdivisions (c) or (d), 44 Stat. 70, 71, * * *.

It should be noted that the *Dimock* case, *supra*, held that decedent did not have an interest in property includible in gross estate under

---

[1] SEC. 811. GROSS ESTATE.

The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated, except real property situated outside of the United States—

(a) DECEDENT'S INTEREST.—To the extent of the interest therein of the decedent at the time of his death:

a section of the Revenue Act of 1926 comparable to section 811 (a) of the Code even though in that case: (1) decedent could designate the beneficiary of the death benefit (decedent Salt could not do so), and (2) the Standard Oil Company was obliged upon decedent's death to pay the benefit to a named beneficiary who survived the decedent in accordance with the plan as in effect at the date of death. (Graybar had no such obligation, but reserved the right to withhold payment although a qualified beneficiary survived.)

Of course, entirely apart from the discretion imposed with the Graybar committee, under the Graybar Plan the death benefit might never have been paid if a qualified beneficiary failed to survive, a significant factor noted by the court in the *Dimock* case, *supra.* We hold that the Commissioner erred in including the $40,000 death benefit in decedent's gross estate under section 811 (a). Cf. *Estate of William S. Miller*, 14 T. C. 657, dismissed and affirmed by the Seventh Circuit September 15, 1950; *Estate of Emil A. Stake*, 11 T. C. 817.

Because of other adjustments of the respondent which petitioners have not contested and because the parties have stipulated that petitioners will incur and pay additional administrative expense, attorneys' fees, and expenses of litigation, and the determination and allowance of the allowable deductions for such expenses will be made under the rules of this Court,

*Decision will be entered under Rule 50.*