

# THE ATTORNEY GENERAL

## OF TEXAS

### AUSTIN 11, TEXAS

**WILL WILSON**
**ATTORNEY GENERAL**

July 20, 1959

Honorable Robert S. Calvert          Opinion No. WW-668
Comptroller of Public Accounts
Capitol Station                      Re:  Taxability for inheritance
Austin 11, Texas                          purposes of proceeds of
                                          National Service Life In-
                                          surance Policies and proper
                                          method of taxing partner-
                                          ship interest subject to a
                                          buy and sell agreement be-
Dear Mr. Calvert:                         tween the partners.

        You have requested that we advise you as to the
taxability for inheritance tax purposes of two National Service
Life Insurance policies on the life of Alex Goldstein, herein-
after referred to as the Decedent, in the total amount of
$10,000, payable to his sister.  The pertinent part of Article
7117, Vernon's Civil Statutes, which levies the inheritance tax
is the following:

        "All property within the jurisdiction of this
    State,. . .including the proceeds of life insurance
    to the extent of the amount receivable by the exec-
    utor or administrator as insurance under policies
    taken out by the decedent upon his own life, and to
    the extent of the excess over Forty Thousand Dollars
    ($40,000) of the amount receivable by all other
    beneficiaries as insurance under policies taken out
    by the decedent upon his own life,. . .shall, upon
    passing. . .be subject to a tax for the benefit of
    the State's General Revenue Fund. . . ."

        The insurance involved is authorized by the National
Service Life Insurance Act. 38 U.S.C.A., Sec. 801, et seq.  At
the time of the death of the Decedent, August 7, 1957, Section
816 of the Act made Section 454a of the same Title (World War
Veterans' Act, 1924) applicable to National Service Life Insur-
ance.  The pertinent portion of Section 454a is the following:

    "Payments of benefits due or to become due shall
    not be assignable, and such payments made to, or
    on account of, a beneficiary under any of the laws
    relating to veterans shall be exempt from taxation,
    shall be exempt from the claims of creditors, and
    shall not be liable to attachment, levy, or seizure

by or under any legal or equitable process whatever,
either before or after receipt by the beneficiary.
Such provisions shall not attach to claims of the
United States arising under such laws nor shall the
exemption herein contained as to taxation extend to
any property purchased in part or wholly out of
such payments."

In the brief which has been submitted in connection
with your request, the attorneys for the estate take the posi-
tion that this exemption provision effectuates an exemption
from State inheritance taxes.  They cite the cases footnoted
below in support of their position.[1]

The War Risk Insurance Act of September 2, 1914, and
its amending acts provided for the insurance by the United
States of American vessels, their cargoes, and crews against
the risks of war.  This Act was subsequently amended; and the
Act of June 7, 1924, known as the World War Veterans' Act of
1924, made a new codification abolishing and repealing the
previous acts, with certain exceptions.  There is a great body
of case law involving the construction and application of the
old War Risk Insurance and the World War Veterans' Acts.  As
stated in 147 A.L.R. 1185, in an Annotation entitled "National
Service Life Insurance Act":  "Because of the similarity in
many respects between the older acts and the New National Ser-
vice Life Insurance Act, much of this earlier case law is per-
tinent and valuable authority in the construction of the new
act."

The Federal exemption provision previously quoted was
not incorporated into the World War Veterans' Act until 1935.
However, under similar exemption provisions, even prior to the
enactment of the Act of 1935, veterans' benefits had been held

---

[1] Geier's Succession, 155 La. 167, 99 So. 26 (1924), 32 A.L.R.
353; Re Harris, 179 Minn. 450, 229 N.W. 781 (1930), (See 108
A.L.R. 1109); Tax Commission v. Rife, 119 Ohio St. 83, 162 N.
E. 390 (1928), (See 108 A.L.R. 1109); Wanzel's Estate, 295 Pa.
419, 145 A. 512 (1929), (See 108 A.L.R. 1109); Watkins v. Hall,
107 W.Va. 202, 147 S.E. 876 (1929).  See Re Cross, 152 Wash.
469, 267 P. 414 (1929), overruled on other grounds, (See 108
A.L.R. 1110); Re Verchot, 4 Wash 2d 574, 104 P. 2d (1940);
Sorenson v. Security Bank, 121 Neb. 521, 237 N.W. 620 (1931),
overruled on other grounds;  Sorenson v. Horace State Bank, 125
Neb. 638, 251 N.W. 119 (1933).

exempt, under the Federal statutes, from taxation.  See Kimbrough and Glen on American Law of Veterans, 2d Ed., 1954, 596, Sec. 840.  For this reason, and for the reason stated in the A.L.R. Annotation above referred to, we recognize the pertinence of the decisions cited in the brief submitted in connection with this request.  There is, however, authority to the contrary.

The attorneys for the estate recognize that certain New York cases denied an exemption for inheritance taxes.[2] They also recognize that the United States Supreme Court has held that the above quoted exemption does not preclude the inclusion of the proceeds of a War Risk Insurance policy in the deceased veteran's gross estate for estate tax purposes. United States Trust Co. v. Helvering, 307 U.S. 57. (Decided April 17, 1939.)  This case is still controlling for Federal estate tax purposes.  See American Law of Veterans, supra; Rev. Rul. 55-622.  However, they urge that the difference in the nature of inheritance taxes and estate taxes justifies a different result under inheritance tax statutes.  We cannot agree since we regard the Helvering case as controlling for Texas inheritance tax purposes.

In the Helvering case, the sole question was whether proceeds of a War Risk Insurance policy payable to a deceased veteran's widow were properly included in his gross estate for Federal estate tax purposes.

Section 302 (g) Revenue Act of /̄February 26_7 1926, as amended, 26 U.S.C.A. Sec. 411 included in a decedent's gross estate the amount in excess of $40,000 received by "beneficiaries /̄other than his estate_7 as insurance under policies taken out by the decedent upon his own life."  The veteran's total life insurance for beneficiaries other than his estate exceeded at death the statutory exemption of $40,000 if his War Risk Insurance policy was included.  The Commissioner assessed an estate tax measured by this excess. The decedent's executor contended the War Risk Insurance policy should not be included in the estate because of Section 22 of the World War Veteran's Act /̄June 7_7, 1924, providing that "such insurance. . .shall be exempt from all taxation." 43 Stat. at L. 607, 613, ch. 320.

_____

[2]  Re Schaeffer, (1927), 130 Misc. 436, 224 NYS 305 (See 108 ALR 1110); Re Dean, (1927), 131 Misc. 125, 225 NYS 543, (See 108 ALR 1110); Re Sabin, (1924), 224 App. Div. 702, 228 NYS 890, (See 108 ALR 1111).

The court reasoned that the proceeds of the War Risk Insurance policy should be included in the decedent's estate for the following reasons:

The Revenue Acts from 1918 to 1934, the date of the veteran's death, manifest a consistent policy to tax the proceeds of all life insurance (not payable to an insured's estate) in excess of $40,000; and the Treasury Regulations expressly stated that the term "insurance" as used in the statute refers to life insurance of every description.

With regard to the exemption provision, the court stated that the statutory immunity of War Risk Insurance from taxation does not include an immunity from excises upon the occasion of shifts of economic interests brought about by the death of an insured. The court regarded as analogous the cases in which Federal bonds exempt by statute from all taxation have been subjected to both State and Federal death taxes. Murdock v. Ward, 178 U.S. 139 (1900); Plummer v. Coler, 178 U.S. 115 (1900).

With the exception of Re Verchot, supra, all of the cases cited in footnote 1, as according exemption from death taxes, were decided prior to the decision in the Helvering case. Whether the jurisdictions in which these cases were decided would reach the same results in view of the Helvering decision is immaterial since we are bound to follow that case by the decision in Blackmon v. Hansen, 140 Tex. 536, 169 S.W. 2d 962 (1943).

In the Blackmon case it was held that where community funds were used to pay premiums on a deceased husband's life insurance policies only one half of the proceeds in excess of the $40,000 exemption were subject to inheritance taxes. The court pointed out that prior to 1939, proceeds of life insurance payable to named beneficiaries were not subject to a Texas inheritance tax. The 1939 amendement[3] taxing such insurance proceeds was almost identical with the Federal statute taxing such proceeds. The court said that since the Texas Statute was literally taken from the Federal statute, the presumption is that the Texas Legislature knew of the construction given such statute at the time of its adoption and intended to adopt such statute as construed by the Federal courts. Such statute, therefore, is to be considered by the courts of this

---

[3] H.B. 990, Acts 1939, 46th Leg., p. 646, was passed by the House May 9, 1939; by the Senate June 20, 1939, with amendments; the House concurred in Senate amendments June 20, 1939. H.B. 990 became effective ninety days after adjournment.

State in the light of such construction.  Since the United States Supreme Court had held that under the same fact situation as presented by the Blackmon case only one half of the proceeds of the insurance policy was includible in the decedent's gross estate for estate tax  purposes, Lang v.Commissioner, 304 U.S. 264 (1938), the Texas Supreme Court reached the conclusion above stated.

In the instant case, the same principles are applicable; and it must therefore be presumed that the Legislature intended to adopt the construction which had been placed upon the Federal statute in the Helvering case.  This being so, the proceeds of the War Risk Insurance policies are not exempt from inclusion within Article 7117, V.C.S., for the purpose of calculating inheritance taxes.

You have also requested that we advise you as to the proper  valuation to be placed upon the interest which Decedent had in a partnership at the time of his death.  The Decedent and C. M. McElhannon were partners in a business known as the Bonded Warehouse Company.  In February of 1956, the partners entered into a contract and agreement which recited that they were equal partners in said business, that the value of said partnership was largely dependent upon their individual efforts, and that it was "the desire of the parties hereto that in the event of the death of either of such partners. . .the survivor succeed the partnership $\underline{/}$ sic $\underline{/}$ in the ownership and operation of said business and relieve the estate of deceased of the hazards of the operation of such business and leave unto the estate of the deceased a sum certain."  The remaining portion of the agreement reads as follows:

"NOW, THEREFORE, in consideration of the mutual benefits, covenants, promises and agreements of the parties hereto, to be kept and performed, the parties hereto agree as follows:

"(1)  That the survivor of said partnership will within a reasonable time after the death of first deceased pay to the estate of deceased the full sum of Twenty-five Thousand Dollars ($25,000) cash, less all debts or overdrafts of deceased due to partnership, and assume all partnership indebtedness of any and all nature whatsoever.

"(2)  In consideration of performance by survivor of the conditions of paragraph (1) hereof, each of the parties hereto does by these presents bind their heirs, assigns, executors, administra-

tors and estates, that in the event he should prior decease the other partner, that his executors, administrators and estate will pass full legal title to all of the assets of said partnership to the survivor.

"(3) All expenses in connection with the transfers and assignments described in paragraphs (1) and (2) hereof shall be borne and paid by the survivor.

"(4) In the event of decease of survivor prior to full payment and performance of conditions of paragraph (1) hereof, the assets of said partnership shall pass share and share alike to the estate of said partner."

In an affidavit submitted by Clifford M. McElhannon in connection with the inheritance tax return, he states that he and the deceased partner had entered into a verbal agreement that each partner would take out life insurance on his own life making the co-partner the beneficiary. The amount of life insurance was to be increased from time to time according to the mutual desires of the partners, with the amount of insurance payable to each partner remaining at all times substantially the same. It was further orally agreed between the partners that no change would be made in such life insurance without the consent of the partner named as beneficiary. Premiums on these policies were paid for by check issued on the partnership account.

Subsequent to the death of the Decedent, Mr. McElhannon received $30,226.91 as beneficiary under various policies taken out by the Decedent pursuant to the foregoing agreement. At the date of Decedent's death, the value of his partnership interest was $33,521.40.

The attorneys for the estate have not reported the value of the partnership assets but have reported $25,000 worth of insurance as the value of an asset which replaced it and are claiming a pro rata share of the $40,000 exemption. You ask whether the partnership interest should be reported as an intangible asset of the estate.

The attorneys for the estate take the position that the Decedent's partnership interest should be taxed in accordance with the Federal rule which has been stated as follows:

"Where the stock of the decedent in a close corporation or his interest in a business as partner

is subject at his death to an agreement of sale or
to another's legally binding option to purchase at
a fixed price, the fair market value for Federal
tax purposes is limited to such price, provided the
price was fair at the time it was established and
the decedent could not have disposed of the pro-
perty at any time prior to his death:  Helvering v.
Salvage, 297 U.S. 106 / 56 S.Ct. 375. 80 L.Ed. 511/
(1935); Wilson v. Bowers, 57 F.2d 682 (CCA-2, 1932);
Lomb v. Sugden, 82 F.2d 166 (CCA-2 1936); Claire C.
Hoffman, 2 T.C. 1160 (1943); Estate of James H.
Matthews, 3 T.C. 525 (1944)."  1 Polisher, Estate
Planning and Estate Tax Saving, 311.

We agree with the attorneys for the estate that the
buy and sell agreement in this case was a valid and enforce-
able one.  We think that the consideration was adequate and
that the agreement was not intended as a substitute for tes-
tamentary disposition or as a device to avoid estate taxes.
The partners are unrelated, and there would have been no
reason to consider either a natural object of the other's
bounty.  Even though the agreement does not specifically pro-
hibit either partner selling his interest in the partnership
prior to his death, we think that such prohibition should be
implied in view of the formality of the agreement and the
absolute nature of its provisions.  See "Estate Tax Conse-
quences of Agreements for the Sale of a Partnership Interest
Effective at the Partner's Death--An Appraisal of the Law" by
Wright Matthews, 26 T.L.R. 729, for a discussion of the var-
ious tests which the courts have applied in determining the
validity and effect of such partnership agreements.

But is this agreement binding on the State in deter-
mining the value of the decedent's partnership interest at
his death?  We think not.  The transaction is one which comes
squarely within the provision of Article 7117, V.C.S., which
imposes a tax upon transfers "by deed, grant, sale, or gift
made or intended to take effect in possession or enjoyment at
or after the death of the grantor or donor, . . ."  (Emphasis
supplied.)  Considering the transfer in question as a bona
fide sale of the partnership interest, nevertheless, the pre-
viously stated facts reveal that it was a sale for less than
the full value of such interest at the Decedent's death and
does not reflect the true amount which the surviving partner
received by virtue of the sale intended to take effect at the
death of the Decedent.

The basic distinction between a tax in the nature of
an inheritance tax and a tax in the nature of an estate tax

necessitates a different conclusion from that reached by the Federal courts.  The Federal rule is obviously sound because the Federal tax is based upon the net taxable estate of the decedent at his death.  Therefore, where the estate receives less than the full value of the partnership interest under a bona fide sales agreement, only the amount actually received should be included in computing the estate tax.  But our inheritance tax statute looks  not to the net estate of a decedent  but to the amount received by an individual by virtue of a taxable transfer.

In Schroeder v. Zink, 71 A.2d 321,[4] the court in considering a similar fact situation reached the same result that we here reach.  In this case the court pointed out that in determining whether a particular transfer is intended to take effect at or after the transferor's death, the important question is whether the vesting of possession and enjoyment is dependent upon the settlor's death.  There can be no doubt that the transfer of the Decedent's partnership interest took effect in possession and enjoyment at or after the deceased partner's death.

The court also stated that obviously it was only when there was an adequate consideration substantially equal to the value of the property that sales intended to take effect at death are not taxable and that therefore to the extent that consideration paid was inadequate in value as compared to the value received, it is tantamount to a gift.  It is, in effect, a substitute for a testamentary disposition, and taxable.

Article 7130, V.C.S., provides for the appraisal of property for inheritance tax purposes ". . . at its actual market value if it has a market value, and in case it has none, then its real value at the time of the death of the decedent, . . ."   In Calvert v. Kattar, 301 S.W.2d 318 (Tex. Civ.App., error ref., n.r.e.), the court held that market value for inheritance tax purposes was the following accepted definition as approved by the Supreme Court in State v. Carpenter, 126 Tex. 604, 89 S.W.2d 979 (1936):  ". . . The price the property will bring when offered for sale by one

---

[4] Cited and followed in Minoff v. Margetts, 81 A. 2d 369 (Superior Ct. of N. J., 1951); See In re Cowles' Estate, 219 P. 2d 964 (Wash.Sup., 1950) for a discussion of the conflicting solutions of the problem.

who desires to sell, but is not obligated to sell, and is bought by one who desires to buy, but is under no necessity of buying."

The New Jersey statute in the Schroeder case required an appraisal at "fair market value," which term had been defined in the same terms as the above quoted definition. At page 327, the court states:

"To accord a binding effect to the ante mortem value set in the agreement before us would necessarily oust the tax appraiser of his statutory duty to appraise the property transferred at its 'fair market value', R. S. 54:34-9, N.J.S.A. Such construction would open the door to tax evasion and frustration of the clear legislative mandate. Cf. In re Hartford's Estate, supra, 122 N.J. Eq. at page 498, 194 A. 800."

You are therefore advised that all the insurance received by the surviving partner should be taxed as insurance and accorded its pro rata share of the allowable insurance exemption. You are further advised that the surviving partner owes an additional tax on the value of the partnership assets as such in excess of the contract price.

SUMMARY

The proceeds of National Service Life Insurance policies are subject to inheritance taxes under Article 7117, V.C. S. Where partners entered into agreement which provided that survivor would purchase deceased partner's interest for $25,000 and further verbally agreed that each partner would take out life insurance on his own life naming co-partner as beneficiary, the proceeds of all life insurance policies received by the surviving partner are taxable as insurance and entitled to their pro rata share of exemption from inheritance taxes. The surviving partner also owes an inheritance tax on the value of the partnership assets to

the extent of the value in excess of the
contract price.

Very truly yours,

WILL WILSON
Attorney General

By _James R. Irion_
James R. Irion
Assistant

Marietta McGregor Payne
Assistant

MMP:bct

APPROVED:

OPINION COMMITTEE:
Morgan Nesbitt, Chairman

Tom L. McFarling
Howard Mays
Lawrence Jones

REVIEWED FOR THE ATTORNEY GENERAL

By: W. V. Geppert