Charles M. LAND, As Successor Executor of the Last Will and Testament of John Robert Land, Deceased,

v.

UNITED STATES of America.

Charles M. LAND, Ernest H. Land and Margaret L. Haney, As Executors of the Last Will and Testament of Robert Land, Deceased,

v.

UNITED STATES of America.

Civ. A. Nos. 2040, 2041.

United States District Court
S. D. Alabama, S. D.

Sept. 29, 1960.

John E. Adams, of Adams, Gillmore & Adams, Grove Hill, Ala., for plaintiffs.

Ralph Kennamer, U. S. Atty., Mobile, Ala., for defendant.

DANIEL HOLCOMBE THOMAS, District Judge.

These two cases are actions for the recovery of federal estate taxes alleged to have been erroneously imposed. The cases were consolidated by stipulation of the parties, with the consent of the court, for the reason that the issue presented for decision is identical in the two cases. There is no dispute between the parties with respect to the facts, and there has been filed in each case a stipulation of facts, upon which the cases are submitted. The court after having carefully considered the pleadings, the stipulations of fact, and the briefs presented by counsel, finds the following facts to be true,

and as based thereon reaches the following conclusions of law:

### Findings of Fact

1. John Robert Land died testate on January 5, 1955; his father, Robert Land, died testate on August 24, 1955. Both were residents of Choctaw County, Alabama, at time of death, and the last will and testament of each decedent was duly admitted to probate and record in the Probate Court of Choctaw County, Alabama. Robert Land served until his death as executor under the last will and testament of John Robert Land, whereupon Charles M. Land was appointed successor executor and is still serving in that capacity. Charles M. Land, Ernest H. Land and Margaret L. Haney were duly appointed executors under the last will and testament of Robert Land, deceased, and are now serving as such.

2. Estate tax returns were duly filed by the respective plaintiffs in the two cases. On April 6, 1956, the successor executor of John Robert Land paid estate taxes on his estate in the amount of $44,452.57; and on November 26, 1956, the executors of Robert Land paid estate taxes on his estate in the amount of $48,529.98. Both of such payments were made to the District Director of Internal Revenue at Birmingham, Alabama.

3. In both estates, subsequent to the filing of the returns and payment of estate taxes in the amounts above indicated, deficiency assessments were imposed. The deficiency assessed against the estate of John Robert Land was in the amount of $65,261.29; and the deficiency assessment against the estate of Robert Land was in the amount of $60,729.62. Both of the deficiency assessments were duly paid by the respective plaintiffs in these cases on January 17, 1958, on which date there was also paid $6,959.71 as interest on the deficiency assessment against the John Robert Land estate, and $4,167.05 as interest on the deficiency assessment against the Robert Land estate.

4. Claims for refund were duly filed in behalf of both estates. The refund claimed in behalf of the John Robert Land estate was in the sum of $52,642.15 and interest of $5,631.43; the refund claimed in behalf of the estate of Robert Land was $55,719.16 plus interest of $3,841.55. Both claims were disallowed on April 25, 1958, and the required statutory notices were transmitted to the respective plaintiffs.

5. Plaintiffs in both cases agree that certain adjustments in valuation as reported in the original return were correct and resulted in a tax liability on each estate greater than that disclosed on the original return, so that the amounts claimed by way of refund were, in behalf of each estate, less than the full amount paid as deficiency.

6. Both decedents were, at the time of their respective deaths, members of a partnership known as Land Brothers & Company. At the time of the death of John Robert Land, the partners, other than himself, were his father, Robert Land; his brother, Charles M. Land; and his two sisters, Margaret L. Haney and Dorothy L. Mahaffey. At the time of the death of Robert Land, the other partners were his said son and two daughters. Another son, Ernest H. Land, had originally been a member of this partnership but had retired from the partnership prior to the death of John Robert Land, his interest having been purchased by the remaining partners.

7. From December 31, 1945, until the death of John Robert Land, and thereafter until the death of Robert Land, the partnership operation had been conducted under a valid and bona fide written agreement duly executed by the partners and amended from time to time.

8. At the time of the death of each decedent, the partnership agreement, as amended, contained the following provisions, among others:

"10. The partnership shall continue until dissolved by mutual consent of the partners. Any partner may withdraw from the partnership upon twelve (12) months' notice to

the other partners of his intention to do so; upon such notice being given the other partners shall have, and they are hereby granted, the right or option to purchase within twelve (12) months the interest of the partner so retiring, at a price to be determined as hereinafter set forth, such option to be exercised by all or as many of the other partners as may desire to participate therein. Such withdrawal shall not operate to terminate the partnership nor to require dissolution unless none of the other partners elect to purchase the interest of the retiring partner; if all of the other partners elect not to purchase the interest of the partner so retiring, then the partnership shall be dissolved and its assets liquidated and distributed to the partners.

"11. Death of a partner shall not dissolve the partnership. In the event of death of a partner, the surviving partners shall have and they are hereby granted the right or option to purchase the interest of the deceased partner from his personal representative at any time within twelve (12) months after the appointment of such personal representative, at a price to be determined as hereinafter set forth, such option to be exercised by all or any of the surviving partners who may desire to participate in such purchase; or, if none of the surviving partners desire to purchase the interest of the deceased partner, if agreeable with the surviving partners and the heirs or devisees of the deceased partner, such heirs or devisees of the deceased partner may take the place of decedent in said partnership and the business shall continue to operate under the terms of this agreement. If the option to purchase be not exercised, and if the heirs or devisees of the deceased partner be not taken into the partnership, then the partnership shall be dissolved at the expiration of twelve (12) months from the appointment of the personal representative of such decedent, and its property liquidated and distributed to the partners and to the heirs or devisees of the deceased partner as their respective interests shall then appear.

"12. Books and records of the partnership shall be kept according to approved methods of accounting; at least once each year the books and records shall be closed and profits or losses calculated, and a balance sheet prepared, correctly reflecting the financial condition of the partnership as disclosed by the books; if and when the option contained in paragraph 11 hereof and/or the option contained in paragraph 10 hereof shall become operative, if the prospective vendors and vendees be unable to agree with each other upon the price at which such option may be exercised, then and in that event the prospective vendors shall designate a disinterested person to act as arbitrator; and the prospective vendees shall likewise designate a disinterested person to act as arbitrator; the two arbitrators so chosen shall select a third disinterested person as arbitrator and the three arbitrators so selected shall determine the actual net value of the interest being appraised, such value to be based upon the aggregate value of the partnership assets as determined by the arbitrators, less the aggregate amount of partnership liabilities then existing; one-sixth of such remaining sum shall constitute the basic value of the interest of each partner, but such basic value shall be adjusted to the extent of giving effect, according to accepted accounting practices, to all accounts standing on the books of the partnership which reflect either debits or credits attributable to the partner whose interest is being appraised. The net value of the interest being appraised, so determined,

shall constitute the price at which the interest of such partner may be purchased from his personal representative by the other partners if the option hereinabove contained in paragraph 11 hereof should become operative; 66⅔ percent of such net value, so determined, shall constitute the price at which the interest of such partner may be purchased by the other partners if the option hereinabove contained in paragraph 10 hereof should become operative. The aforesaid arbitrators shall determine their own rules of procedure, and their findings shall be binding upon all parties hereto; any costs and expenses incident to such arbitration shall be paid out of partnership funds, but the price at which the option may be exercised shall be adjusted in such manner that the vendor shall bear his proportionate part thereof.

"If the personal representative or representatives of a deceased partner be a member or members of the partnership, then the option contained in paragraph 11 hereof may not be exercised at a price determined by agreement between such personal representative or representatives and the other partners unless it be approved by an adult devisee of the deceased partner, other than a member of the partnership, if there be one, or if there be no such adult devisee, then by some person designated for that purpose in the last will and testament of the deceased partner, if any such person be so designated; and if arbitration shall become necessary to determine such option price, and the personal representative or representatives of the deceased partner be a member or members of the partnership, then the arbitrator chosen by the personal representative shall be such person as shall be designated by the adult devisees of the deceased partner other than members of the partnership, or by some person des-

ignated by such deceased partner in his last will and testament for that purpose, if there be no such adult devisee or devisees.

"13. No partner shall sell or encumber his or her separate interest in the partnership assets; no partner shall, without the written consent of the other partners, become surety for any person."

9. Neither decedent had, at the time of his death, elected to retire or withdraw from the partnership and no notice of any intention to do so had ever been given to the other partners. The steps provided for in paragraph 10 of the partnership agreement, as amended, had not been undertaken by either decedent and the options provided for in that paragraph had not and did not become operative with respect to either decedent prior to his death.

10. Plaintiffs and the revenue agents who examined the respective estate tax returns agreed upon the fair market value of all the assets belonging to the partnership, the aggregate amount of its liabilities, and the status of the capital account and drawing account of each decedent at the times of their respective deaths; and as based thereon they agreed with each other upon the value of the interest of each decedent in the partnership, excepting only that plaintiffs asserted, and still assert, that the value of the interest of each decedent in the partnership as thus computed should be reduced by reason of the restrictive and/or option agreement embodied in the foregoing excerpts from the partnership agreement. The unagreed portion of the deficiency assessed against each estate was based on the determination of the Commissioner of Internal Revenue that no reduction in value of either decedent's interest in the partnership could be based upon such restrictive and/or option agreement.

11. The respective values of decedents' interests in the partnership, and the agreed fair market value thereof as of the date of the respective deaths of

decedents, apart from reductions, if any, because of the restrictive partnership agreement provisions quoted above, were $437,574.92 for the interest of John Robert Land at the time of his death (⅓ of which would be $145,858.31); and $468,-354.31 for the interest of Robert Land at the time of his death (⅓ of which would be $156,118.10).

12. Plaintiffs contend that the value of the partnership interest of each decedent should be reduced by one-third by reason of the restrictive and/or option agreement; they further contend that there should be an additional allowance for administrative expense, including attorneys' fees, etc., occasioned by the disallowance of the reduction in value thus claimed by plaintiffs. The parties have agreed that this submission be limited to a determination of the principal question at issue, namely, whether the values of the respective interests should be reduced by reason of the restrictive and/or option agreement. When the court shall have determined that issue, the parties will then undertake to agree with each other on the amount allowable as additional administrative expense and the actual amount of taxes and interest, if any, refundable to the respective plaintiffs.

### Conclusions of Law

Both decedents whose estates are here involved were members of a partnership known as Land Brothers & Company. The pertinent provisions of the partnership agreement are quoted in the findings of fact. Paragraph 13 of the agreement provides that no partner shall sell or encumber his or her separate interest in the partnership assets. Paragraph 10 provides that any partner may withdraw from the partnership upon twelve months' notice to the other partners, whereupon the other partners are granted the right or option to purchase within twelve months the interest of the partner so retiring, at a price to be determined as provided in paragraph 12. Paragraph 11 provides that upon the death of a partner the surviving partners are granted the right or option to purchase the interest of the deceased partner within twelve months after the appointment of a personal representative, at a price to be determined as provided in paragraph 12. Paragraph 12 provides that if either option becomes operative, and if the parties be then unable to agree upon the price at which the option may be exercised, the price shall be determined by arbitration; the arbitrators are directed to determine the aggregate value of partnership assets, and to deduct therefrom the aggregate amount of partnership liabilities then existing; the proportionate interest of the partner in the sum remaining shall constitute the basic value of the interest being appraised, and such basic value shall then be adjusted to reflect either debits or credits attributable to the partner whose interest is being appraised. The net value of the interest being appraised, so determined, shall constitute the price at which the interest may be purchased from the personal representative of a deceased partner; 66⅔% of such net value shall constitute the price at which the interest may be purchased from a retiring partner. It will thus be observed that if a living partner should desire to withdraw from the partnership, the other partners are granted the right or option to purchase his interest at a discount of one-third; but if the option is brought into existence by death of a partner, the option price is full value of the interest, without discount. It is the contention of plaintiffs that for the purpose of determining estate tax valuation, the interest of the partners should be valued as such interest existed in the hands of the living partner, and not in the hands of his executor after his death. Plaintiffs therefore contend that the value for estate tax purposes should be discounted for estate tax purposes by reason of the restrictive agreement. The sole question presented for decision is whether the interest of the two partners whose estates are here involved should be valued for estate tax purposes at a discount or at full value.

The question is unique. Counsel for both parties concede that the exact situation has not heretofore been presented to any court for decision. Plaintiffs rely primarily upon Knowlton v. Moore, 178 U.S. 41, 20 S.Ct. 747, 44 L.Ed. 969; Edwards v. Slocum, 264 U.S. 61, 44 S.Ct. 293, 68 L.Ed. 564; and Lomb v. Sugden, 2 Cir., 82 F.2d 166. On the other hand, Lomb v. Sugden, supra; Wilson v. Bowers, 2 Cir., 57 F.2d 682; and May v. McGowan, 2 Cir., 194 F.2d 396, are interpreted by the Government as requiring a restrictive provision operative after death, as well as during decedent's life, in order to have such provision affect estate tax valuation.

The court is of the opinion, however, that the decision here is controlled by the principles enunciated in Knowlton v. Moore, supra, and Edwards v. Slocum, supra, as applied in Lomb v. Sugden, supra. In Edwards v. Slocum, the court said:

"The Government's argument turns largely upon the consideration that a residue is only what is left after the payment of paramount claims. But this is not a tax upon a residue, it is a tax upon a transfer of his net estate by a decedent, a distinction marked by the words that we have quoted from the statute, and previously commented upon at length in Knowlton v. Moore, 178 U.S. 41, 49, 77 [20 S.Ct. 747, 44 L.Ed. 969]. It comes into existence before and is independent of the receipt of the property by the legatee. It taxes, as Hanson, Death Duties, puts it in a passage cited in 178 U.S. 49 [20 S.Ct. 751], 'not the interest to which some person succeeds on a death, but the interest which ceased by reason of the death.'"

In Lomb v. Sugden, the Circuit Court of Appeals for the Second Circuit held that corporate stock which was subject during the life of decedent to a restrictive agreement of the same type involved here, could not be valued for estate tax purposes at any greater sum than the price fixed in the restrictive agreement, notwithstanding that decedent apparently could have devised 10% of her stock in such manner as to be free from any restriction. The court there said [82 F.2d 168]:

"Because of the agreement, the decedent could not have secured a price greater than $69.445 at the time of her death. It is as of that time that the value of the stock must be determined. Then she could only give it or sell it to the other stockholders at the price fixed. Its value to the estate can be no greater than that with which the decedent parted. Edwards v. Slocum, 264 U.S. 61, 63, 44 S.Ct. 293, 68 L.Ed. 564."

While it is true, as pointed out by Government counsel, that in the Lomb case there was a restrictive or option agreement effective after death as to the bulk of the stock, it would appear that the decision was controlled by the agreement which existed during the life of decedent and not by the circumstances which came into being at her death.

To apply the rule announced in Edwards v. Slocum and followed in Lomb v. Sugden, neither decedent here could sell his interest in the partnership during his lifetime except to the other partners at two-thirds of its proportionate part of the total value of partnership assets less liabilities.

The fair market value of a minor fractional interest in any property is normally less than that exact fraction of the total value of the property. That is true because the purchaser of such minor fractional interest would necessarily have the expense of partition or division from the whole before he could enjoy sole ownership of any portion of the property. Here, not only are we dealing with a minor fractional interest, but we have that interest encumbered with an absolute prohibition against sale to outsiders, coupled with provisions under which the co-owners may purchase the interest of any partner at a discount of one-third, if and when such partner may desire to withdraw and convert his interest into

cash. The amount of the discount thus stipulated is not unreasonable and is not indicative of any lack of bona fides in the arrangement and agreement. In fact, it is stipulated between the litigants herein that the agreement is valid and bona fide.

It is therefore the opinion and conclusion of the court that the interests of the two decedents whose estates are involved here should be valued for estate tax purposes at a discount of one-third, and that the value of the interest of John Robert Land should be fixed at $291,716.61, and the value of the interest of Robert Land at $312,236.21. When so fixed, plaintiffs will be entitled to a refund; but under the stipulation of the parties, the exact amount of the refund will involve a further computation of some additional allowance for administrative expense, which the parties themselves will compute and submit to the court for entry of judgment thereon.

Counsel for the parties are directed to agree on an order in accordance herewith within thirty days from this date.