MAY et al. v. McGOWAN, Collector
of Internal Revenue.
No. 127; Docket 22137.

United States Court of Appeals
Second Circuit.

Argued Jan. 15, 1952.

Decided Feb. 5, 1952.

Theron Lamar Caudle, Asst. Atty. Gen., Ellis N. Slack, Robert N. Anderson and Edward J. P. Zimmerman, Sp. Assts. to the Atty. Gen., George L. Grobe, U. S. Atty., Buffalo, N. Y., and Austin J. Donovan, Asst. U. S. Atty., Rochester, N. Y., for defendant-appellant. S. Walter Shine, Washington, D. C., of counsel.

Moser, Johnson & Reif, Rochester, N. Y., for plaintiffs-appellees. J. Boyd Mullan, Rochester, N. Y., of counsel.

Before AUGUSTUS N. HAND and CLARK, Circuit Judges, and BRENNAN, District Judge.

PER CURIAM.

The plaintiffs are executors of the estate of Albert E. May, deceased, and obtained a judgment for $13,727.62 plus interest and costs in the United States District Court

against the defendant McGowan, Collector of Internal Revenue, for an overpayment of taxes on the estate of Albert E. May. This overpayment was because the Commissioner had increased to $50,000 the valuation of 500 shares of stock of H. H. Babcock & Company, Inc., belonging to the decedent at the time of his death which, in making their return, his executors had reported at zero.

Prior to the year 1926 the decedent was engaged in the sale of coal and coke under the name of H. H. Babcock & Company in Rochester, New York. In April 1927 his son, Harry A. May, entered his employ and, in October 1929, became an equal partner with his father in the business. Before the formation of the partnership the decedent had borrowed extensively from the Lincoln-Alliance Bank. This indebtedness was thereafter assumed by the partnership although, as between father and son, the father agreed to pay the debt. In February 1936 he and his son organized a New York corporation under the name of H. H. Babcock & Company, Inc., and transferred to it all the assets of their partnership in consideration of the assumption by the corporation of the indebtedness of the partnership to the bank up to an aggregate amount of $161,500 and of the issuance to each of them of 500 shares of the capital stock of the corporation which constituted its total capital stock of 1,000 shares.

On April 7, 1936 father and son agreed in writing that during their joint lives neither of them would dispose of any of the stock of the corporation without offering it to the other at a price of $100 per share. However, in the case of the son, because he agreed personally to guarantee to the bank its loans which on April 7, 1936 amounted to $163,409.86, the option price of $100 per share was to be reduced by ⅟₅₀₀ of the indebtedness due the bank at the date of the exercise of his option. It was also agreed between the father and son that on the death of either, the other would have an irrevocable option to purchase on the foregoing terms.

The decedent died on May 12, 1945. At that time the indebtedness to the bank was $90,707.50. If the right of Harry A. May to purchase the stock belonging to his father at the time of the latter's death was legally enforceable, the father's stock was then valueless for estate tax purposes because it was subject to call by Harry A. May at $100 per share less ⅟₅₀₀ of the principal indebtedness. In other words, the son could acquire it under the agreement for nothing—that is, for $100 per share less ⅟₅₀₀ of $90,707.50.

It seems clear that with the option outstanding no one would purchase the stock of the decedent at its value unrestricted by the option when it was subject to call by Harry A. May at zero. This was the rationale of our decisions in Wilson v. Bowers, 2 Cir., 57 F.2d 682, and Lomb v. Sugden, 2 Cir., 82 F.2d 166. In Lomb v. Sugden, supra, 82 F.2d at page 168, we said that this view was supported by the Supreme Court's decision in Helvering v. Salvage, 297 U.S. 106, 56 S.Ct. 375, 80 L.Ed. 511, to the effect that an outstanding option to purchase restricts the market value of stock in the hands of the owner to the option price. We see no reason for questioning the foregoing decisions. If they leave a loophole for tax evasion in some cases, here the district court found that there was no purpose to evade taxes. Such a loophole, if important, should be closed by legislative action rather than by disregarding the cases we have cited.

 Counsel for the collector argues that the case at bar should be distinguished from those decisions because Harry A. May was already bound as a member of the partnership to pay the claims of the bank. But that obligation was different from the personal obligation which he agreed to and did assume in 1936, for the bank could not resort to his personal assets for payment of its loans until after it had exhausted its remedy against the partnership assets. Seligman v. Friedlander, 199 N.Y. 373, 92 N. E. 1047. Therefore, the obligation Harry A. May assumed was different from the one he was under before he personally guaranteed the bank. This substitution of a new obligation was in itself an adequate and new consideration for his undertaking. See Jaffray v. Davis, 124 N.Y. 164, 26 N.E. 351, 11 L.R.A. 710. Moreover, the son advanced

consideration for his father's promise when, at the time the partnership was created, he assumed a partnership liability for the indebtedness to the bank which in fact was incurred by his father. While that assumption was past consideration in relation to the 1936 agreement, the New York statute makes such agreement enforceable when, as here, it was in writing and was signed by the father. N. Y. Personal Property Law, McK.Consol.Laws, c. 41, § 33, subds. 2, 3.

For the foregoing reasons, the judgment of the court below is affirmed.