224 F.2d 892
 Lynn R. BRODRICK, Director of Internal Revenue for the District of Kansas, Appellant,
v.
Theodore GORE and Ralph Gore, as Executors of the Last Will and Testament of Harry Gore, Deceased, Appellees.
 No. 5038.
 United States Court of Appeals Tenth Circuit.
 July 22, 1955.
 
 COPYRIGHT MATERIAL OMITTED Carolyn R. Just, Washington, D. C. (H. Brian Holland, Asst. Atty. Gen., Ellis N. Slack, Hilbert P. Zarky, Marvin Weinstein, Spec. Assts. to the Atty. Gen., and William C. Farmer, U. S. Atty., Wichita, Kan., were with her on the brief), for appellant.
 J. B. McKay, El Dorado, Kan. (James B. McKay, Jr., El Dorado, Kan., was with him on the brief), for appellees.
 Before BRATTON, HUXMAN and PICKETT, Circuit Judges.
 BRATTON, Circuit Judge.
 
 
 1
 This was an action by the executors under the will of Harry Gore against the Director of Internal Revenue for the District of Kansas to recover an asserted overpayment of estate tax. Harry Gore, a resident of Wichita, Kansas, was the father of Theodore Gore and Ralph Gore. In 1933, the father and the two sons entered into written articles of partnership to conduct the business of drilling and operating oil and gas wells and selling the products therefrom. Under the terms of the agreement, the father owned an undivided one-half interest in the partnership, each of the two sons owned an undivided one-fourth interest therein, and the income therefrom was to be divided in that proportion. The agreement provided among other things that the assets of the partnership were accepted by the members at the amount of their book value; and that in the event any one of the copartners should desire to withdraw from the partnership the entire interest of such copartner should be sold to the remaining copartner or copartners, as the case might be, for a sum equal to $4,500 for each ten per cent of the assets owned by the withdrawing member. By supplemental agreement entered into in 1937, it was provided that each of the copartners owned an undivided one-third interest in the partnership. And by a second supplemental agreement entered into in 1949, it was provided that in the event any one of the copartners should desire to withdraw the remaining copartners should have the exclusive right for a period of ninety days to purchase the interest of the retiring copartner; that if the remaining copartners should elect to exercise their option, they should purchase such interest, share and share alike, for a sum equal to the book value of the interest of the withdrawing copartner in all of the assets of the partnership as of the date of the withdrawal; that upon the death of any of the copartners all of the interest of the deceased copartner in the assets of the partnership should be sold to the surviving copartners, share and share alike, and the surviving copartners should purchase the interest of the deceased copartner, share and share alike, for a sum equal to the book value of the interest of the deceased copartner in the assets of the partnership as of the date of the death of such deceased copartner; that such provision was contractual; and that the interest of each of the copartners should be burdened with such agreement to buy and sell.
 
 
 2
 The business was conducted under the terms of the agreement until the death of Harry Gore in 1951. By will, the decedent bequeathed to the two sons his interest in the partnership. The two sons were residuary legatees under the will, and they were named as executors. In their individual capacity, the two sons filed in the Probate Court of Sedgwick County, Kansas, in the matter of the estate of the decedent, a pleading denominated petition for allowance of demand, for specific performance, and for determination that administration of the partnership was unnecessary. By such pleading, the two sons sought to compel themselves, as executors, to sell to themselves, as individuals, the decedent's interest in the partnership for the amount of $345,897.53, the alleged book value of such interest at the time of the death of the decedent. The probate court appointed a special administrator to represent the estate, and such administrator filed an answer. A hearing was had. The special administrator was present and represented the estate. At the conclusion of the hearing, the court found that the rights and interests of the estate had been and were in all respects duly represented, safeguarded, and protected; determined and adjudged that the articles of copartnership as supplemented were valid, subsisting, and enforceable; determined and adjudged that the estate of the decedent was obligated to sell and the two sons were obligated to purchase the interest of the decedent in the partnership assets for a price equal to the book value thereof as of the date of the death of the decedent; determined and adjudged that such book value was $345,897.53; and determined and adjudged that the sons, as executors, perform specifically the terms and provisions of the articles of partnership by executing and delivering upon receipt of such sum of $345,897.53 good and sufficient conveyances transferring to such sons, as individuals, the interest of the decedent in the assets of the partnership. The specified sum was paid to the executors and they executed the conveyances. Relying upon the agreement and the determination of the probate court, the federal estate tax return filed by the executors included the interest of the decedent in the partnership at its book value of $345,897.53, and the tax thereon was paid. A deficiency in estate tax was asserted against the executors on the basis that the fair market value of the interest of the decedent in the assets of the partnership was $516,457.84 and that the tax should be computed on that sum. The executors paid the deficiency, and this action was instituted to recover the asserted overpayment. The Director answered. Summary judgment was entered for the executors, and the Director appealed.
 
 
 3
 Legal rights and interests of parties in property are created and determined by state law. Morgan v. Commissioner, 309 U.S. 78, 626, 60 S.Ct. 424, 84 L.Ed. 585, 1035; Helvering v. Stuart, 317 U.S. 154, 63 S.Ct. 140, 87 L.Ed. 154; Trapp v. United States, 10 Cir., 177 F.2d 1, certiorari denied, 339 U.S. 913, 70 S.Ct. 573, 94 L.Ed. 1339. The copartnership agreement into which the decedent and the two sons entered was executed in Kansas and was to be performed there. Therefore, questions concerning its interpretation and effectiveness in respect to property rights were questions of local law in that state. Blair v. Commissioner, 300 U.S. 5, 57 S.Ct. 330, 81 L.Ed. 465. And it is settled law that probate courts in Kansas are vested with all necessary legal and equitable jurisdiction to determine judicially all matters incident to the administration and settlement of estates. Foss v. Wiles, 155 Kan. 262, 124 P.2d 438; Egnatic v. Wollard, 156 Kan. 843, 137 P.2d 188; Bitzer v. Smith, 158 Kan. 83, 145 P.2d 148; Rosenberg v. Baum, 10 Cir., 153 F.2d 10. Viewed in the light of that firmly established general rule, it is clear that the probate court was clothed with jurisdiction to determine and adjudicate the existence of the partnership agreement, to determine and adjudicate the effectiveness of the provision in the contract binding and obligating the executors to convey to the surviving copartners the interest of the decedent in the assets and property of the partnership for a sum equal to the book value thereof, to determine and adjudicate the book value of such interest, and to order the executors to convey it upon payment of the book value. With jurisdiction of the subject matter and the parties, the probate court entered its order and judgment. No appeal having been taken therefrom, the adjudication became final and conclusive as between the parties in the settlement of their legal rights, particularly in respect to the interest of the estate in the partnership property being burdened or encumbered with such obligation respecting its sale.
 
 
 4
 We recognize and subscribe in full measure to the firmly established wholesome rule that where an order or judgment of a state court is obtained through collusion, or is attended with some other badge of fraud, or is entered in a nonadversary proceeding, it is not binding as between one or more of the parties to such proceeding and the United States in respect to income or estate tax imposed by federal revenue legislation. Botz v. Helvering, 8 Cir., 134 F.2d 538; Saulsbury v. United States, 5 Cir., 199 F.2d 578, certiorari denied, 345 U.S. 906, 73 S.Ct. 645, 97 L.Ed. 1342. But here, the order or judgment entered by the probate court was expressly pleaded in the complaint. In his answer, the Director admitted the entry of such order or judgment, and he did not plead that it was collusive, or was otherwise fraudulent, or was entered in a nonadversary proceeding. His answer was silent in respect to tendering any issue of that kind. And in the absence of collusion, in the absence of other bad faith, and in the absence of its entry in a nonadversary proceeding, the order or judgment must be given effect as a judicial determination that the executors were obligated to sell and convey to the surviving copartners the interest of the decedent in the partnership property for a sum equal to the book value thereof, and as a judicial determination of such book value. Freuler v. Helvering, 291 U.S. 35, 45, 54 S.Ct. 308, 78 L.Ed. 634; Blair v. Commissioner, supra.
 
 
 5
 While legal rights and interests in property are created and determined by state law, the federal revenue acts designate the manner in which and the extent to which such rights and interests shall be subject to federal tax. Morgan v. Commissioner, supra; Helvering v. Stuart, supra; Trapp v. United States, supra. Section 811(a) of the Internal Revenue Code, 26 U.S.C.A. § 811(a), provides in substance that for purposes of estate tax the value of the gross estate of a decedent shall be determined by including the value of all property of the decedent to the extent of his interest therein at the time of his death. At the time of his death, the book value of the interest of the decedent in the assets and property of the partnership was $345,897.53. Its fair market value may have been more than its book value. But such interest was burdened and encumbered with a certain restriction contained in the partnership agreement. If the decedent had concluded during his lifetime to withdraw from the partnership, he would not have been free to sell his interest in the open market or to a willing buyer at its fair market value. Under the terms of the agreement, he was effectively obligated to sell such interest to the other copartners for a sum equal to its then book value. Upon the death of the decedent, the executors under his will were in like manner effectively bound and obligated to sell such interest to the surviving copartners for a sum equal to its book value at the time of the death of the decedent. The surviving copartners were effectively bound and obligated to purchase such interest from the estate and to pay therefor its book value. And inasmuch as the estate was thus bound and obligated, such interest had no value to the estate in excess of its book value. In other words, the interest of the estate in the property was by the contract limited in respect to value, the limitation being the book value thereof at the time of the death of the decedent. And where the interest of an estate in property is burdened or encumbered in that respect by such an effective contractual provision, the estate tax should be based upon the book value rather than a fair market value in excess of the book value. Helvering v. Salvage, 297 U.S. 106, 56 S.Ct. 375, 80 L.Ed. 511; Wilson v. Bowers, 2 Cir., 57 F.2d 682; Lomb v. Sugden, 2 Cir., 82 F.2d 166; May v. McGowan, 2 Cir., 194 F.2d 396.
 
 
 6
 Relying upon Section 811 of the Internal Revenue Code, supra, as warrant for the imposition of the deficiency in estate tax, the Director in his answer pleaded as an affirmative defense that the partnership agreement, as amended, constituted a transfer by the decedent of an interest in property other than by bona fide sale for an adequate and full consideration in money or money's worth which was includable in his gross estate as a transfer in contemplation of death or under which the decedent reserved for his life or for a period not in fact ending before his death the right to the income from the property transferred; and he pleaded as a further affirmative defense that to the extent that the decedent by the agreement transferred an interest in the property for less than the fair market value thereof at the time of the death of the decedent, such transfer was a revocable transfer. It is argued that these defenses raised genuine issues of material fact and therefore it was error to enter summary judgment for the executors. But the decedent did not by the execution of the agreement make any transfer of property in contemplation of death, revocable, or otherwise, within the intent and meaning of the statute. He entered into a partnership agreement with his sons providing for the operation and conduct of a partnership business. The agreement was by its clear terms enforceable in favor of and against the estate of the first copartner to die and the two surviving copartners, whether the first to die was the decedent or one of the sons. It was specifically enforceable regardless of which copartner should die first. It was not known whether the decedent would outlive one or both of the sons. And it was supported by an adequate and full consideration, within the intent and meaning of the statute. The affirmative defenses pleaded did not present genuine issues of material fact. They presented issues of law which were not well founded.
 
 
 7
 The entry of summary judgment is challenged on the further ground that there were other genuine issues of material fact for exploration and determination on a trial. The purpose of Rule of Civil Procedure 56(c), 28 U.S.C.A., authorizing entry of summary judgment in specified circumstances is to permit the expeditious disposition of cases in which there are no genuine issues of material fact upon which the outcome of the litigation depends. But the procedure is not to be used as a substitute for a regular trial of cases in which there are disputed issues of material fact upon which the ultimate outcome hinges, and it should be invoked with due caution to the end that litigants may be afforded a trial where there exists between them a bona fide dispute of material facts. Where it appears however that there is no genuine issue as to any material fact upon which the outcome of the litigation depends, the case is appropriate for disposition by summary judgment and it becomes the duty of the court to enter such judgment. SMS Manufacturing Co. v. U. S.-Mengel Plywoods, 10 Cir., 219 F.2d 606. And in determining whether a motion for summary judgment is well founded, the court may pierce formal allegations of fact in the pleadings and determine from the entire case whether there are genuine issues of fact for resolution upon a formal trial. Avrick v. Rockmont Envelope Co., 10 Cir., 155 F.2d 568.
 
 
 8
 The government did not deny that the decedent and the two sons entered into the partnership agreement; did not deny that they entered into the two supplemental agreements; did not deny that the agreement as supplemented contained the provision in respect to conveying to the surviving copartners the interest of the decedent in the partnership property at and for a sum equal to the book value thereof; did not deny that the petition was filed in the probate court; did not deny that the special administrator was appointed and answered; did not deny that a hearing was held; did not deny that the probate court entered its order or judgment; and did not deny that in compliance with such order the interest of the decedent in the partnership assets was conveyed to the surviving copartners at and for a sum equal to the book value thereof. And, as previously said, the Director did not plead affirmatively that the partnership agreement was executed in bad faith, and did not plead that the proceeding in the probate court was collusive or nonadversary in character. With no such issues of fact joined, the question whether the estate tax should be computed on the basis of the book value or the market value was one of law.
 
 
 9
 The judgment is affirmed.