511 F.Supp. 653 (1981)
Nina Lee ROTH, etc., Plaintiff,
v.
UNITED STATES of America, Defendant.
No. 80-1212C(2).
United States District Court, E. D. Missouri, E. D.
April 14, 1981.
Barry A. Short and Michael D. Mulligan, Lewis, Rice, Tucker, Allen & Chubb, St. Louis, Mo., for plaintiff.
Ludwig H. Adams, Trial Atty., Tax Division, Dept. of Justice, Washington, D. C., for defendant.

MEMORANDUM
NANGLE, District Judge.
This case is now before the Court on plaintiff's motion for partial summary judgment. Plaintiff brought this suit pursuant to 28 U.S.C. § 1346(a)(1) seeking to recover an alleged overpayment of estate taxes on the estate of decedent Lee J. Sloan. The primary area of dispute between the parties, and the issue to which *654 the instant motion for partial summary judgment is directed, concerns the proper valuation of the stock of L.J.S. Investment Company held by decedent at the time of his death.
The essential facts do not appear to be in serious dispute. Though defendant in its memorandum in opposition to the instant motion has questioned the facts asserted in the affidavits plaintiff has submitted in support of this motion, and the conclusions plaintiff draws therefrom, no evidence has been submitted in opposition to those affidavits. It is clear that a party may not rest on mere denials or arguments of counsel when faced with a properly supported motion for summary judgment. Rule 56(e), Federal Rules of Civil Procedure. Neither may a party merely hope to cast doubt upon those facts through cross-examination at trial. Rather, the party opposing the motion must come forward with sufficient evidence to show there is a genuine issue for trial.
Decedent was the holder at the time of his death of two hundred sixty-five shares of stock of L.J.S. Investment Company. Four hundred sixty-six were outstanding at that time. The remaining shares were held by decedent's spouse, daughter, and grandchildren. L.J.S. Investment Company is the successor corporation of Sloan's Moving & Storage Company. In 1972, Sloan's had changed its business and its name.
In August 1964, all the shareholders of Sloan's executed a stock purchase agreement. This agreement prohibited inter vivos transfers of the stock outside of the immediate family of Lee Sloan, except in accordance with the provisions of the agreement. Upon the death of any shareholder, or upon the desire of any shareholder to transfer his shares outside Sloan's immediate family, the company and the other shareholders had the option to purchase the shares at a price determined in accordance with a formula set out in the agreement. The formula was a fair and reasonable method of determining the option price at the time it was adopted. Only if these options were not exercised could the stock be sold to others at a different price.
Prior to 1956, decedent owned all the stock of Sloan's. Between then and 1964, decedent had given a small amount of stock to members of his family as gifts. The stock purchase agreement was the result of the decedent's concern that the stock might come into the hands of non-family members. The agreement was designed to maintain family ownership and control of the company.
At the time of decedent's death, the formula set out in the agreement provided for a purchase price of zero. The price was based on prior years' income, and, with the exception of 1972, the company had lost money each of the preceding seven years. The company purchased decedent's stock for zero dollars shortly after his death in accordance with the stock purchase agreement.
Plaintiff, executrix of decedent's estate, valued the stock owned by decedent in accordance with the stock purchase agreement for purposes of his estate tax return. Defendant rejected this valuation method, valued the stock at $144,319.00, and assessed a deficiency accordingly. Plaintiff paid the deficiency, filed an administrative claim for a refund, and brought this suit when no results were obtained in the administrative proceeding.
The affidavits filed by plaintiff in support of the instant motion establish that the stock purchase agreement was established for a valid business purpose and that the price determined thereunder was fair and reasonable at the time of its adoption. Clearly, maintenance of family ownership and control is a legitimate business purpose. Estate of Bischoff v. Commissioner, 69 T.C. 32 (1977); Estate of Reynolds v. Commissioner, 55 T.C. 172 (1970); Slocum v. United States, 256 F.Supp. 753 (S.D.N.Y.1966); Estate of Littick v. Commissioner, 31 T.C. 181 (1958). As stated earlier, defendant has not controverted these affidavits, or otherwise cast doubt upon the facts asserted therein. The existence of this valid business purpose negates defendant's vague assertions that the agreement was a device to pass decedent's *655 property to the natural objects of his bounty for less than adequate consideration.
Plaintiff's evidence shows that the agreement was in full force and effect at the time of decedent's death, and defendant does not contend that the agreement herein is not enforceable. See State v. Sho-me Power Co-operative, 356 Mo. 832, 204 S.W.2d 276 (1947). And it is clear from the terms of the agreement that, either during his lifetime or upon his death, decedent's shares could be sold only for the price fixed by the agreement. This Court sees no reason, therefore, for disregarding the price as determined in accordance with the stock purchase agreement.
It now seems well established that the value of property may be limited for estate tax purposes by an enforceable agreement which fixes the price to be paid therefor, and where the seller if he desires to sell during his lifetime can receive only the price fixed by the contract and at his death his estate can receive only the price theretofore agreed on.
Estate of Weil v. Commissioner, 22 T.C. 1267, 1273-1274 (1954). See, also, Estate of Bischoff, supra; Estate of Nicolo Fiorito v. Commissioner, 33 T.C. 440 (1959); Brodrick v. Gore, 224 F.2d 892 (10th Cir. 1955); May v. McGowan, 194 F.2d 396 (2d Cir. 1952); Citizens Fidelity Bank & Trust Company v. United States, 209 F.Supp. 254 (W.D.Ky. 1962); Provident Nat. Bank v. United States, 581 F.2d 1081, 1086 (3rd Cir. 1978).
That the actual fair market value of the shares may have been, and undoubtedly was, higher than the price set by the agreement does not dictate a contrary conclusion. For no matter what the actual fair market value of the stock, decedent during his life, and his executrix after his death, could receive no more for it than called for in the agreement. May v. McGowan, supra; Lomb v. Sugden, 82 F.2d 166 (2d Cir. 1936); Wilson v. Bowers, 57 F.2d 682 (2d Cir. 1932). The option price is therefore the proper value for estate tax purposes.
Plaintiff's motion for partial summary judgment will therefore be granted.