ESTATE OF MABEL G. SELTZER, DECEASED, AND H. JACK SELTZER, EXECUTOR, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Estate of Seltzer v. Commissioner
Docket No. 32134-84.
United States Tax Court
T.C. Memo 1985-519; 1985 Tax Ct. Memo LEXIS 120; 50 T.C.M. (CCH) 1250; T.C.M. (RIA) 85519; September 30, 1985. George E. Christianson, for the petitioner. Linda S. Bednarz, for the respondent. GERBER
MEMORANDUM OPINION GERBER, Judge: This case is before the Court on petitioner's motion for summary judgment. The issue for our consideration is whether the terms of a buy-sell agreement control the valuation of shares of stock in a closely held corporation, at the date of death, for Federal estate tax purposes. In his notice of deficiency dated June 28, 1984, respondent determined *121 the value of the shares to be fair market value ($460,000) at the date of decedent's death as opposed to the amount received ($251,800) by decedent's estate pursuant to the buy-sell agreement. The value respondent assigned to the stock, plus the inclusion of transfers made by decedent prior to her death, in the amount of $22,334, resulted in a proposed deficiency of $72,842. On May 20, 1985, petitioner filed a motion for summary judgment under Rule 121, Tax Court Rules of Practice and Procedure.The motion was calendared for a hearing on June 18, 1985, at which time the parties orally presented their positions on the summary judgment motion. The facts are not in dispute because of respondent's agreement to petitioner's request for admissions by means of a stipulation of facts, received at the time of oral argument. Respondent contends that a dispute as to the facts exists to the extent that the parties disagree as to the value to be assigned to the interest in the Palmyra Bologna Company (Palmyra). If, however, we find as a matter of law that the value of the interest is governed by the buy-sell agreement, the fair market value would be irrelevant. On the other hand, if petitioner's *122 motion for summary judgment is unsuccessful, then further proceedings will be necessary to determine fair market value. We are satisfied that the material facts of this case are not in dispute and that petitioner's motion is both timely and appropriate. Associated Press v. United States,326 U.S. 1, 6 (1945); Shiosaki v. Commissioner,61 T.C. 861, 863. Petitioner is the Estate of Mabel G. Seltzer, Deceased, H. Jack Seltzer, Executor. At the time the petition was filed the executor resided in Palmyra, Pennsylvania. An estate tax return was filed for decedent's estate with the Internal Revenue Service Center at Philadelphia, Pennsylvania, on or about December 16, 1981. Decedent died on April 2, 1981, at which time she owned 100 shares of stock in Palmyra. Under the terms of her will, decedent bequeathed her 100 shares of stock to her stepson, H. Jack Seltzer (Jack), who owned an additional 398 shares of Palmyra's 598 outstanding shares. The remaining 100 shares were owned by Mr. Wilbur Gibble, then secretary and treasurer of Palmyra. The Palmyra company was started in 1902 as a sole proprietorship by Harvey L. Seltzer (Harvey), father of Jack *123 and husband of decedent. On November 22, 1928, Palmyra was incorporated, with Harvey and two of his employees as shareholders and directors. Harvey died on January 21, 1946, and on January 20, 1947, the company was reorganized. The stock was distributed as follows: Shareholders
Shares
H. Jack Seltzer
398
Mabel G. Seltzer
100
Harry R. Seltzer (brother of Harvey)
102
G. Wilbur Gibble (officer and employee)
100
Harry M. Sellers (officer and employee)
100
Total
800
On November 22, 1950, the five shareholders entered into a Stock Ownership Agreement (Agreement) providing that all transfers of stock are subject to the terms of the Agreement. The Agreement required the written consent of all the shareholders for any disposition or encumbrance of the stock. In the absence of such consent, a shareholder intending to sell his stock was required to give the corporation and all other shareholders 60 days' notice. More importantly, all shareholders were obligated to offer to sell the stock to the corporation, or secondly to the other shareholders, at book value as defined in the Agreement. [1] The Agreement was enforceable against all the shareholders and the estate *124 of any deceased shareholder. In the case of a shareholder's estate the same requirement existed to offer the shares to the corporation, or secondly to any surviving shareholders. All shareholders agreed in paragraph 10 of the Agreement, that their right to own stock was dependent upon their concurrent positions as a director, officer, or employee of Palmyra. Upon the severance of such relationship, the shareholder was required to offer his stock for sale in accordance with the Agreement. The Agreement further provided *125 that the parties thereto would be irreparably harmed if the Agreement were not specifically enforced because the stock could not be readily purchased or sold on the open market. The first agreeing shareholder whose relationship with Palmyra terminated was Harry R. Seltzer, because of his death in 1954. On November 5, 1954, his estate, pursuant to the Agreement, sold his 102 shares to the corporation at book value. On March 31, 1958, Harry M. Sellers resigned from the company. Upon his resignation he sold his 100 shares to the corporation, as provided in the Agreement. After decedent's death her estate offered her 100 shares for sale to the corporation at book value, in accordance with the Agreement. The corporation exercised its option and purchased the stock for $251,800, the price determined pursuant to the Agreement (and the amount received and reported by the estate). Respondent rejected the value listed on the estate tax return ($251,800), asserting that the fair market value ($460,000) at the date of decedent's death, should have been returned. [2]
Respondent *126 argues that the buy-sell agreement should be disregarded for estate tax purposes because it does not represent a bona fide business arrangement. Respondent further argues that because the Agreement excludes goodwill from the computation of the price to be paid pursuant to the Agreement it does not represent a bona fide business arrangement. [3] Petitioner, on the other hand, argues that because the estate could not sell the stock for more than the price as determined under the Agreement, it is controlling for estate tax purposes. Generally, for estate tax purposes, the value of the gross estate is the fair market value of property at the date of death or alternate valuation date. Sec. 2031(a); [4] sec. 20.2031-1(b), Estate Tax Regs. *127 In the instance of unlisted stock, the value is determined by reference to comparables and other factors, such as: (1) Net worth; (2) earning power; and (3) dividend-paying capacity. Sec. 2031(b); sec. 20.2031-2(f), Estate Tax Regs. An exception to the general valuation rules may exist where the security or stock is subject to an option or contract to purchase (buy-sell agreement). The effect of the option or contract upon value may be to reduce the fair market value or, in appropriate circumstances, fix the value for Federal estate tax purposes, in spite of an otherwise established value. Respondent's regulations state that little weight should be afforded to such a contract if the decedent was free to dispose of the stock during his lifetime. Sec. 20.2031-2(h), Estate Tax Regs. That same regulation provides that the contract price will be disregarded unless the argument represents a "bona fide business arrangement" and not "a device to pass the decedent's shares to the natural objects of his bounty for less than an adequate *128 and full consideration in money or money's worth." Sec. 20.2031-2(h), Estate Tax Regs. Courts, in determining whether an option or contract may fix the value of a closely held business for estate tax purposes, have utilized essentially the same basic criteria. This Court and others have scrutinized options and buy-sell agreements in determining whether there was a bona fide business arrangement, Estate of Bischoff v. Commissioner,69 T.C. 32, 36 (1977); Estate of Reynolds v. Commissioner,55 T.C. 172, 194 (1970); Estate of Littick v. Commissioner,31 T.C. 181, 187 (1958); Roth v. United States,511 F. Supp. 653, 654 (E.D. Mo. 1981); Baltimore National Bank v. United States,136 F. Supp 642, 646 (D. Md. 1955); and have held that maintaining a desired ownership and control of a business constitutes a legitimate business purpose. Roth v. United States,supra at 654; Estate of Reynolds v. Commissioner,supra at 194; Slocum v. United States,256 F. Supp 753 (S.D.N.Y. 1966); Estate of Littick v. Commissioner,supra at 187. *129 Respondent's regulation lists "good will of the business" in the context of "other relevant factors," but tempers such listing as depending "upon the facts of each case." Sec. 20.2031-2(f), Estate Tax Regs. Petitioner contends that the November 22, 1950, buy-sell agreement was a bona fide business arrangement to maintain ownership and control of Palmyra. Respondent argues that the express exclusion of goodwill from the computation of the contract price causes the buy-sell agreement to be something less than a bona fide business arrangement. Based upon the uncontroverted facts in this record and considering the facts in the best light for respondent, we find the buy-sell agreement to be a bona fide business arrangement which fixes the value of the decedent's shares of Palmyra at $251,800. Petitioner contends that the purpose of the Agreement was to restrict ownership and control of the corporation to the five contracting shareholders. Respondent denies petitioner's contention. The agreed facts support petitioner's contention. A reasonable interpretation of the Agreement, coupled with the parties' strict adherence to terms of the Agreement over the past 30 years, establishes *130 that the Agreement was entered into to maintain a desired ownership and control of Palmyra. The Agreement explicitly conditions the ownership of Palmyra's stock upon being an employee, officer or a director of the corporation. Upon severance of such relationship, the Agreement requires the shareholder to offer his stock for sale to the corporation or to the other shareholders. Respondent would have us ignore this language in ascertaining the purpose of the Agreement. Since the Agreement was entered into, three of the contracting parties have severed the "ownership required relationships" with the company. In each such case the stock was sold to the corporation at book value, pursuant to the Agreement. The purchased stock was neither sold to anyone outside the circle of original shareholders, nor redistributed among the remaining shareholders. Rather, it is being held as treasury stock. We think this is convincing evidence that the purpose of the Agreement was to restrict ownership and control of the corporation. Absent the Agreement, this restrictive ownership could not have been achieved. We are convinced that the Agreement was entered into and has been adhered to as a bona *131 fide business arrangement. To determine whether the buy-sell agreement in this case merely has some effect on value or fixes the value of the business interest for estate tax purposes, the following factors should be considered: (1) Whether the price is determinable under the terms of the agreement; (2) whether the owner of the interest is obligated to sell at the contract price and the company or other interest holders are obligated to purchase at that price; (3) whether the obligation to sell at the contract price is binding upon the owner of the interest both during his lifetime, and upon his estate at his death; and (4) whether the agreement is a bona fide business arrangement and not a testamentary device. United States v. Land,303 F.2d 170 (5th Cir. 1962), cert. denied 371 U.S. 862; Brodrick v. Gore,224 F.2d 892 (10th Cir. 1955); Lomb v. Sugden,82 F.2d 166 (2d Cir. 1936); Wilson v. Bowers,57 F.2d 682 (2d Cir. 1932); Roth v. United States,supra;Estate of Fiorito v. Commissioner,33 T.C. 440 (1959); Estate of Littick v. Commissioner,supra; *132 Estate of Weil v. Commissioner,22 T.C. 1267 (1954); May v. McGowan,194 F.2d 396 (2d Cir. 1952). The requirement that the purchase price be determinable from the terms of the Agreement is satisfied in the instant case. Paragraph 7 of the Agreement succinctly sets forth the formula to be used in determining book value. [5]
The second requirement that the owner be obligated to sell, and the other contracting parties be obliated to purchase at the contract price, is also satisfied. An interpretation of the Agreement as a whole requires each shareholder who desires to dispose of his shares to sell them to the corporation, or to the other shareholders, at book value, and the corporation or the other shareholders to so purchase the stock. This interpretation of the Agreement is further supported by paragraph 11 which provides in part, as follows: Should any dispute arise concerning the sale or disposition of the stock, an injunction may be issued restraining any sale or disposition pending the determination of such controversy. In the event of any controversy concerning the right or obligation to purchase or sell *133 any of the stock, such right or obligation shall be enforceable in a court of equity by a decree of specific performance. * * * In addition, the Agreement recites that the parties will be irreparably harmed if the Agreement is not complied with specifically. Third, the requirement that the interest holder and his estate be obligated at all times to sell at the contract price has also been met. Paragraph 2 of the Agreement provides that, except for transfers between shareholders, no stock can be disposed of or encumbered without the shareholder's written consent. This consent can be obtained only after the stock has been first offered for sale to the corporation or the other shareholders. Based upon prior experience, it appears likely that the shares of stock would be purchased by either the corporation or the other shareholders for the price established in the Agreement. As to the fourth requirement, it is well settled that an enforceable agreement, which fixes the price to be paid, may limit the value of property for estate tax purposes. Roth v. United States,supra at 655; Estate of Fiorito v. Commissioner,supra at 444; Brodrick v. Gore,supra at 896; *134 Estate of Weil v. Commissioner,supra at 1273; May v. McGowan,supra at 397. In applying this rule, the Court of Appeals for the Tenth Circuit stated in Brodrick v. Gore,supra at 896: And inasmuch as the estate was thus bound and obligated, such interest had no value to the estate in excess of its book value. In other words, the interest of the estate in the property was by the contract limited in respect to value, the limitation being the book value thereof at the time of the death of the decedent. And where the interest of an estate in property is burdened or encumbered in that respect by such an effective contractual provision, the estate tax should be based upon the book value rather than a fair market value in excess of the book value. * * * [Citations omitted] In the instant case, as in the other cases where the agreement was held to be controlling, decedent, at the time of death, had no greater interest than the price fixed by the Agreement. If decedent had sold her shares to the corporation pursuant to the Agreement, on the date of her death she would have received no more than the book value as determined *135 under the Agreement, the value reported and received by decedent's estate for estate tax purposes. Respondent relies on Estate of Trammell v. Commissioner,18 T.C. 662 (1952), and City Bank Farmers Trust Co., Executor v. Commissioner,23 B.T.A. 663 (1931), in support of his position. These cases are distinguishable. In Estate of Trammell v. Commissioner,supra, the agreement fixed the price to be paid to the estate of the partner first to die and there was no restriction on inter vivos transfer at a price greater than the agreement. In City Bank Farmers Trust Co., Executor v. Commissioner,supra, the estate of the deceased shareholder was not obligated to sell the stock to the corporation or the other shareholders. The courts, in upholding the effectiveness of buy-sell agreements, have not overlooked those defects. Rather, it has been pointed out that where the agreement does not restrict decedent's inter vivos transfer of the interest, or where the contracting parties are not mutually obligated to sell and purchase at a fixed price, the property subject to the agreement will be included in the decedent's *136 estate at fair market value on the date of death. See Estate of Weil v. Commissioner,supra at 1274; Estate of Fiorito v. Commissioner,supra at 444. Inasmuch as the value of the stock owned by decedent was fixed by the Agreement, and could be sold for no more than the price as determined pursuant to the Agreement, neither by decedent nor her estate, we hold that the price so determined is controlling for estate tax purposes. The fact that the fair market value of the encumbered interest may have been higher than the price fixed by the Agreement does not require us to find to the contrary. See Roth v. United States,supra at 655; May v. McGowan,supra at 167; Wilson v. Bowers,supra at 684. Neither does the fact that the value of goodwill is excluded from the purchase price invalidate the Agreement. See Estate of Fiorito v. Commissioner,supra33 T.C. at 442. Although respondent did not place any emphasis on the relationship of the agreeing shareholders, that factor is usually the corollary to the lack of a bona fide business arrangement in situations involving closely *137 held corporations. If the contract fixing the price is a substitute for testamentary grant or devise, the contract is held to lack a bona fide business purpose. That aspect was considered in Estate of Bischoff v. Commissioner,69 T.C. 32 (1977). In that case we commented that a restrictive buy-sell agreement for the maintenance of family ownership and control may be a legitimate business consideration, citing Estate of Reynolds v. Commissioner,55 T.C. 172 (1970); Estate of Littick v. Commissioner,31 T.C. 181 (1958); and Baltimore National Bank v. United States,136 F. Supp. 642 (D. Md. 1955). Estate of Bischoff v. Commissioner, 32 T.C. at 39-40. In this case only two of the five agreeing shareholders were legally related. H. Jack Seltzer was the nephew of Harry R. Seltzer. Mabel Seltzer was H. Jack Selzter's stepmother and Harry R. Seltzer's sister-in-law.Messrs. Gibble and Sellers were unrelated to each other and to any of the Seltzers. With those facts, it is less likely that relationship would have played a role in the execution of the Agreement. Petitioner's motion for summary judgment *138 will be granted. To reflect the foregoing, An appropriate order and decision will be entered.
Footnotes
1. Paragraph 7 of the Agreement provides that book value is to be determined in accordance with sound accounting practice, observing the following: 1. All accounts payable and accounts receivable taken at face amount less deductible discount and bad debts reserve. 2. Inventory computed at lower of cost or market except finish stock and work in progress which would be computed at a cost which includes an allowance for profit. 3. All land, buildings, machinery and equipment taken at their book value (normal gross book value less depreciation). 4. Provision made for all prepaid and accrued items, and proper reserves established for all corporation taxes.↩
2. Respondent determined the fair market value of the stock by comparing it with allegedly comparable stock.↩
3. Paragraph 7 of the Agreement provides in part, as follows: While all of the Stockholders are cognizant of the fact that the Corporation possesses good will, nevertheless, for the purpose of this Agreement, they hereby consent not to charge one another therefor, and in determining the purchase price of the shares of stock, no allowance of any kind shall be made for the good will, trade name, or any intangible asset or assets of the Corporation.↩
4. Unless otherwise indicated, all statutory references are to the Internal Revenue Code of 1954, as amended and in effect during the year at issue.↩
5. See note 1, supra.↩