**Clayton G. DORN and David F. Dorn executors of the Estate of Ruth H. Dorn, Appellees,**

v.

**UNITED STATES of America, Appellant.**

**No. 86–3676.**

United States Court of Appeals, Third Circuit.

Argued May 21, 1987.

Decided Sept. 2, 1987.

Rehearing and Rehearing In Banc Denied Sept. 28, 1987.

Michael L. Paup, Robert S. Pomerance, Kenneth L. Greene (argued), Appellate Section, Tax Div., Dept. of Justice, Washington, D.C., for appellant.

Edward J. Greene (argued), Eckert, Seamans, Cherin and Mellott, Pittsburgh, Pa., for appellees.

Before SLOVITER, BECKER and GARTH, Circuit Judges.

## OPINION OF THE COURT

BECKER, Circuit Judge.

This appeal in a tax refund case concerns the correct valuation for federal estate tax purposes of 54,000 shares of stock subject to certain legally binding, nonassignable stock options granted to the children and grandchildren of decedent, Ruth H. Dorn. The district court found that the shares should be included in the gross estate at the option price, as advocated by the executors, and not at the market price of the shares on the date of death, as contended by the government. Accordingly, the district court entered judgment for Dorn's executors.

We find it clear from the record that none of the options was granted pursuant to "a bona fide business arrangement." Instead, all were "a device to pass the decedent's shares to the natural objects of [her] bounty for less than an adequate and full consideration in money or money's worth." Treas.Reg. § 20.2131–2(h) (1958). That regulation controls here and requires that the stock be valued for estate tax purposes at the price at which it traded when Dorn died. We therefore reverse and direct the entry of judgment in favor of the Government.

### I.

Pursuant to a pretrial stipulation filed with the district court, the facts material to this case are not in dispute. On July 2, 1973, Ruth H. Dorn granted to her children and grandchildren options on a total of 18,000 shares of Forest Oil Corporation (hereinafter "Forest Oil") common stock, exercisable at any time for ten years from

the date of the grant. Under the terms of the options, each child or grandchild—there were thirty six such people—could purchase 500 shares of the stock at the price of $20 per share. On December 21, 1973, decedent granted an identical set of options except that, unlike the first set, these contained a declaration that the decedent "intend[ed] to be legally bound [t]hereby."

Finally, on January 10, 1974, decedent granted to her children and grandchildren a third set of options for 36,000 more shares of Forest Oil common stock (so that there were options outstanding on a total of 72,-000 shares). Under the third set, each child or grandchild received the option to purchase 1,000 shares of stock for $24 per share with the options exercisable for ten years from the date of the grant. Like the second set of options, the third set contained a declaration that the decedent intended to be legally bound thereby. The parties have stipulated that Dorn's intention in granting all three sets of the options was to transfer all appreciation in the optioned stock in excess of the option price as a gift, and that no consideration in money or money's worth was received for the options. However, they have also stipulated that the second and third sets of options granted were legally binding on Dorn under the laws of the Commonwealth of Pennsylvania.[1]

While the options were exercisable the decedent and her estate retained legal title to sufficient shares of Forest Oil common stock to cover any calls her relatives could have made thereunder. No legal restrictions prevented the option holders from exercising any of their options, nor were there any formal or informal agreements made by the option holders which restricted their rights to exercise them. The stock options were granted on the advice of Dorn's estate planning advisers. The advisers believed that the "option technique"

could limit the value of the Forest Oil stock that would become subject to federal estate tax in her gross estate. Specifically, it was their hope, and decedent's, to remove from her gross estate any appreciation in the stock above the option prices. The option prices were set in such a way that the value of the option would be within Dorn's annual exclusion for gift tax purposes.

Dorn died on July 4, 1980. On that date she owned 72,074 shares of Forest Oil stock. As of the date of her death, none of her children or grandchildren had exercised any of the options.[2] Forest Oil common stock was traded over-the-counter from at least 1973 through 1982. The fair market value of the stock on the date of Dorn's death was $31.4375 per share, based upon the mean between the bid and asked prices in the over-the-counter market on July 3, 1980, and July 7, 1980.

On April 6, 1981, Clayton Dorn and David Dorn, as executors of decedent's estate, filed a federal estate tax return. On that return each share of decedent's Forest Oil common stock was valued at its option price, either $20 or $24 per share. Subsequently the Commissioner determined that the stock should have been valued at the mean between the bid and asked prices on July 3, 1980, and July 7, 1980—$31.4375 per share. He asserted a deficiency of $298,113.37 in estate tax.[3] The executors paid the asserted deficiency plus the interest thereon and filed an administrative claim for refund. The claim was not allowed, and the executors filed a suit for refund in the district court on November 16, 1984.

In the district court, the material facts were stipulated, and the case was submitted on cross-motions for summary judgment. The executors argued that the stock should be valued for federal estate tax purposes at its option price. The Govern-

---

1. *See* Uniform Written Obligations Act, 33 P.S. § 6 (declaration of intention to be legally bound is effective substitute for consideration).

2. Since decedent's death, her children and grandchildren have acquired 52,279 shares of Forest Oil common stock through the exercise of the options. The options covering the re-

maining 19,721 shares were not exercised and have since expired.

3. Other tax deficiencies were also asserted by the Commissioner. All of these deficiencies have been paid and are not at issue on this appeal.

ment, on the other hand, urged that the stock must be included in the decedent's gross estate at its fair market value, as determined by the market quotations on the applicable valuation date.

The district court sustained each side's position in part. As to the first set of options, covering 18,000 shares, the court agreed with the Government that they were not only unsupported by consideration but also nonbinding, since they lacked any declaration by the decedent that she intended to be bound thereby. The court concluded that such nonbinding options did nothing to depress or elevate the value of the stock, so that the market quotation of $31.4375 controlled the estate tax valuation of the shares covered by those options.[4]

The district court ruled that the remaining 54,000 shares were includible in the decedent's gross estate at the option price ($20 or $24, as the case might be). The district court based this decision on its conclusion that Dorn did not own all of the property rights evidenced by the 54,000 shares of Forest Oil common stock because, by granting legally binding options, she had irrevocably transferred a portion of those property rights to her children and grandchildren. The court recognized that the decedent had granted those options "as a gift," and that Dorn received no consideration in exchange. Like the executors, however, the district court reasoned that the binding options "divided up" the decedent's "bundle of property rights" in the stock into "two separate property interests," and gave "one of those separate property interests" to the donees, thereby permitting them to capture the benefit of any appreciation in the stock over the option price. App. at 100; appellees' br. at 26–33. In giving away that benefit to the optionees, the court decided, the decedent had made "irrevocable *inter vivos* gifts" which were subject to the federal gift tax and which divested her of part of her "bundle of rights" in the stock. All that was left in decedent's hands when she died, held the district court, was a "smaller bundle"

having a fair market value equal to the option price. App. at 100–101.

Based on the foregoing analysis, the district court held that the estate tax on the shares was not to be measured at their fair market value of $31.4375 per share, but at the option price. The court further held that Treasury Regulation § 20.2031–2(h) did not control the estate tax valuation of the stock because the rules imposed by that Regulation "are not applicable with respect to the options in the case at bar," App. at 100, and "are not necessary in this case to protect the sanctity of the Federal transfer tax system." *Id.* at 101. The court also ruled that "[the Regulation] prevent[s] the avoidance of Federal estate tax on what are effectively *gratuitous* testamentary transfers if such options are not effective until the death of the decedent." (emphasis in original.) The court thereupon entered summary judgment for the executors and the government timely appealed.

## II.

### A.

■ Federal estate tax is "imposed on the transfer of the taxable estate of every decedent who is a citizen or resident of the United States." 26 U.S.C. § 2001(a), *et seq.* The gross estate, the starting point for the calculation of the amount of tax to be paid, is determined by totalling the value of all property owned by the decedent at the time of his or her death. The gross estate also includes "the value of all property to the extent of the interest therein of the decedent at the time of his death." 26 U.S.C. § 2033 (1954).

The Treasury Regulations state that, generally, securities are included in the gross estate at the fair market value as defined by Treas.Reg. § 20.2031–1 (1958):

> the price at which the property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or to sell and both having reasonable knowledge of relevant facts.

---

4. The executors have not appealed this decision.

However, in certain circumstances, the regulations recognize that the price obtained from the marketplace is inappropriate. Therefore, Treasury Regulation § 20.-2031–2(h), the only regulation which pertains to the extent of the inclusion in the gross estate of optioned stock, states:

(h) *Securities subject to an option or contract to purchase.* Another person may hold an option or a contract to purchase securities owned by a decedent at the time of his death. The effect, if any, that is given to the option or contract price in determining the value of the securities for estate tax purposes depends upon the circumstances of the particular case. Little weight will be accorded a price contained in an option or contract under which the decedent is free to dispose of the underlying securities at any price he chooses during his lifetime. Such is the effect, for example, of an agreement on the part of a shareholder to purchase whatever shares of stock the decedent may own at the time of his death. Even if the decedent is not free to dispose of the underlying securities at other than the option or contract price, such price will be disregarded in determining the value of the securities *unless it is determined under the circumstances of the particular case that the agreement represents a bona fide business arrangement and not a device to pass the decedent's shares to the natural objects of his bounty for less than an adequate and full consideration in money or money's worth.*

Treas.Reg. § 20.2031–2(h) (1958) (emphasis added).

### B.

■ We recognize that the options involved in this case were legally binding on the decedent and her estate for the ten year period. However, the emphasized portion of Treasury Regulation § 20.2031–2(h) controls and requires a contrary result from that reached by the district court. The courts are required to defer to Treasury Regulations if they implement the congressional mandate in some reasonable manner. *National Muffler Dealers Assn.* *v. United States,* 440 U.S. 472, 476, 99 S.Ct. 1304, 1306, 59 L.Ed.2d 519 (1979).

The executors do not challenge the validity of the regulation. They argue instead that the regulation is not applicable in this case and that it applies only to options which are not effective until after the death of the grantor. We reject this argument for several reasons.

■ First, the provision's wording cuts strongly against the interpretation offered by appellees. The regulation provides that if the terms of the option allow the decedent to dispose of the stock during her life at any price during her life, the option price is to be accorded little weight. But even when an option prevents the decedent from selling the stock at other than the option price the estate must still show that the options were granted as part of a bona fide business arrangement and not as a device to avoid taxes. The fact that the options may be exercised during the decedent's life therefore does not mean the option price must be used for gross estate valuation purposes. Nor does it make a difference that the option grant was subject to federal gift tax (or, as was the case here, that it came within the gift tax exclusion). Our interpretation of the regulation is informed by the fact that Congress's overarching goal in this area was to limit circumvention of the general rule of fair market value at date of death by transactions that are not at arm's length. *See* 26 U.S.C. § 2036 (1954).

Although few cases have relied on Treasury Regulation § 20.2031(h) for support, those which do discuss it support the position that the option price affects the value of the gross estate only if the option was granted at arm's length. *Cartwright v. United States,* 457 F.2d 567, 571 (2d Cir. 1972), for example, explains that if a restrictive agreement "upon the transaction of stock is created in an arm's length transaction, Treasury Regulation § 20.2031–2(h) requires that the price so specified be determined to be the fair market value of the shares." (footnotes omitted). *McDonald v. Commissioner of Internal Revenue,* 764

F.2d 322, 329 (5th Cir.1985), similarly notes, though in dictum, that securities which are subject to an option are to be valued at the option price unless "such is merely [a] device to pass them for less than full and fair consideration." Whether the option there at issue was exercisable during the grantor's life played no part in the court's decision to uphold regulation 20.2031–2 against a challenge that it was unreasonable. That issue was also left undiscussed by the court in *St. Louis County Bank v. United States,* 674 F.2d 1207 (8th Cir.1982), although the options at issue there appear to have been exercisable while the grantor was alive.

■ In this case, Dorn had no valid business purpose for granting the stock options; the executors do not even argue that this is the case. In addition, she received no consideration in "money or money's worth" for the options. Therefore, Dorn's options do not meet the second and third prongs of the three prong test of § 20.-2031–2(h): the options must (1) be legally binding on the decedent, (2) be made pursuant to a bona fide business arrangement, and (3) not be a device to pass the shares to her issue for less than adequate and full consideration in money or money's worth. *See also Slocum v. United States,* 256 F.Supp. 753 (S.D.N.Y.1966) (summary judgment for estate upheld where article of incorporation had valid business purpose when adopted and was not adopted as tax avoidance device).

We reached a similar result in *Commissioner v. Bensel,* 100 F.2d 639 (3d Cir. 1938), *aff'g* 36 B.T.A. 246 (1937), where a father had given his son an option to buy his stock when the father died. In that case, we held that the stock was to be included in the gross estate at the option price because the transaction was made at arm's length, the father and son were hostile to each other, and, therefore, the options were not granted as a device to avoid estate tax: the options were granted because that was the only way the father could keep his son in the corporation's employ. Because, in Dorn's case, the executors have admitted that the sole reason for the granting of the options was that "[her] advisers indicated that the option technique could very well result in limiting the amount includable in her estate attributable to Forest Oil stock," (App. 81) and no business transaction was involved, *Bensel* is distinguishable.

*Hoffman v. Commissioner,* 2 T.C. 1160 (1943), is also apposite. In *Hoffman,* the decedent granted his brother an option to buy his stock when he died. The tax court held that "the fact that the option is given to one who is the natural object of the bounty of the optionor requires substantial proof to show that it rested upon full and adequate consideration," and that this heavy burden was not sustained. In Dorn's case, the same is true: the executors had to provide substantial proof that Dorn received adequate consideration for the options—a burden they did not sustain. The fact that, in *Hoffman,* the options were not exercisable until after the grantor's death, does not render *Hoffman* inapplicable to the case at bar despite the district court's holding to the contrary: as discussed above, the regulation ·requires that, even if the options are legally binding and exercisable before the grantor's death, the options be granted pursuant to a bona fide business arrangement and that they not be a device to pass the shares to decedent's issue for less than full consideration. If these two conditions are not met, the price of the stock obtained from the marketplace is the value of the stock to be included in the gross estate for estate tax purposes.

### III.

Because the granting of the options was not made pursuant to a bona fide business arrangement and they were granted as a device to pass the shares for less than full consideration, we hold that the options do not change the value of the stock as far as the gross estate is concerned. The Commissioner was therefore correct in valuing the stock at $31.4375 per share. The district court order granting the summary judgment to the plaintiffs will be reversed

and the case remanded with the direction to enter judgment for the government.[5]

**5.** Given that Treasury Regulation § 20.2031–2(h) specifically deals with options to purchase stock owned by a decedent at the time of her death, it is dispositive of this case, and, hence we need not decide whether 26 U.S.C. § 2036, which pertains to transfers with retained life estate, would also dictate that the full price of the stocks be included in Dorn's estate.